[Civ. No. 54728. First Dist., Div. One. Jan. 13, 1984.]

TIMOTHY ROWE, a Minor, etc., Plaintiff and Appellant, v.
DEBBIE LYNN DORROUGH et al., Defendants and Respondents.

**COUNSEL**

Gerald C. Sterns, Bryce C. Anderson, John A. DeRonde, Jr., Glen A. DeRonde and DeRonde & DeRonde for Plaintiff and Appellant.

Ralph Robinson, Louis H. Castoria and Wilson, Elser, Edelman & Dicker for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Plaintiff Pauline Rowe, as guardian ad litem for Timothy Rowe, appeals from a superior court order quashing service of summons on defendant Yamaha Motor Company, Ltd., Japan (hereafter Yamaha Japan).

The action's complaint disclosed that the plaintiff minor, Timothy Rowe, suffered personal injuries and damages caused by a collision between an automobile and a Yamaha motorcycle operated by him. Among the action's several defendants was joined Yamaha Japan, the motorcycle's manufacturer, on the theory of strict liability in tort. Service of summons was effected upon that defendant, among others.

Upon such service Yamaha Japan moved to quash service of summons "on the ground that the court lacks jurisdiction over Yamaha [Japan], in that no basis for jurisdiction exists between it and the State of California."

The motion to quash was granted, and this appeal followed.

We state the relevant and legally admissible evidence presented to the superior court on the motion.

Yamaha Japan is a Japanese corporation which itself does no business in the State of California. It manufactures motorcycles in Japan which it sells in Japan to Yamaha International Corporation, also known as Yamaha Motor Corporation USA, a California corporation (hereafter, Yamaha USA).

Yamaha USA in turn, sells and distributes the motorcycles in California and other states of the union. Such sales and distribution are pursuant "to a nationwide selling effort and this creates a demand for the product in Japan." Upon sale and delivery of the motorcycles to Yamaha USA in Japan, Yamaha Japan has no further "involvement" with them.

And Yamaha Japan "maintains no office in the State of California, employs no person in the State of California, is not qualified to do business in the State of California, does no business in the State of California, owns no real or personal property in the State of California, is party to no contract in the State of California, and performs no services in the State of California."

(We take no notice of other *unsworn* self-serving allegations and "facts" appearing only in the complaint and the parties' briefs.)

■ Further, after compliance with Evidence Code section 459, we take judicial notice of (1) the fact that a great number of Yamaha motorcycles were and are sold in California (Evid. Code, § 452, subd. (g)), and of the reported cases, *Dotterweich* v. *Yamaha Intern. Corp.* (D.C. Minn. 1976) 416 F.Supp. 542, and *Yoder* v. *Yamaha International Corporation* (E.D. Pa. 1971) 331 F.Supp. 1084. (Evid. Code, § 452, subd. (c).)* *Dotterweich* found that: "Two of the five directors of [Yamaha Japan] also act as two of the five directors of [Yamaha USA]." (416 F.Supp., pp. 543-544.)

Code of Civil Procedure section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

■ And: As noted in *Michigan Nat. Bank* v. *Superior Court* (1972) 23 Cal.App.3d 1, 6 [99 Cal.Rptr. 823]: "Section 410.10 of the Code of Civil Procedure . . . manifests an intent to exercise the broadest possible jurisdiction. The constitutional perimeters of this jurisdiction are found in the decisions of the United States Supreme Court."

We are advised by a decision of the United States Supreme Court that: "The limits imposed on state jurisdiction . . . have been substantially re-

---

*Such judicial notice will be of fact and of law. (See legis. committee com., Deering's Ann. Evid. Code, § 452 (1966 ed.); 29B West's Ann. Evid. Code, § 452 (1966 ed.).) As to facts, however, such notice will be taken only "of the truth of facts" asserted in "'orders, findings of fact and conclusions of law, and judgments.'" (*Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918]; and see *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 46 [170 Cal.Rptr. 533]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 159 [76 Cal.Rptr. 680]; *Jordan* v. *County of Los Angeles* (1968) 267 Cal.App.2d 794, 798 [73 Cal.Rptr. 516].)

laxed over the years [because] 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" (*World-Wide Volkswagen Corp.* v. *Woodson* (1979) 444 U.S. 286, 292-293 [62 L.Ed.2d 490, 498, 100 S.Ct. 559].)

■ A state may exercise jurisdiction against a nonresident where it is "fair" and "reasonable" to do so; its exercise must not offend " " "traditional notions of fair play and substantial justice." " " (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* p. 292 [62 L.Ed.2d at p. 498]; *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357].)

■ "The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction." (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264]; and see *Hanson* v. *Denckla* (1958) 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1297, 78 S.Ct. 1228]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].) Among the considerations will be (1) the "interest" of the forum state "in opening its courts to residents seeking redress . . ., particularly when its courts are the only ones accessible to them as a practical matter," (2) whether the cause of action arises out of or is connected with the defendant's forum-related activity, and (3) the desirability of avoiding "multiplicity of suits with possibly conflicting results if plaintiff is forced to sue" some defendants in the forum state, and another elsewhere. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899, 902-903, 906 [80 Cal.Rptr. 113, 458 P.2d 57].)

■ But: "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286, 294 [62 L.Ed.2d 490, 499-500].)

■ The principal argument of Yamaha Japan is that this state's superior court, as a matter of law, is devoid of jurisdiction over it because, as noted, it "maintains no office in the State of California, employs no person in the State of California, is not qualified to do business in the State of California,

does no business in the State of California, owns no real or personal property in the State of California, is party to no contract in the State of California, and performs no services in the State of California." Having no *direct* contact of any kind with California, it argues, imposition of the state's jurisdiction is constitutionally unacceptable.

Yamaha Japan misapprehends the law.

The evidence before the superior court made manifest that a large number of Yamaha motorcycles were marketed in California through the instrumentality of Yamaha USA, and that Yamaha Japan derived an economic benefit therefrom.

■ "A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending upon whether it deals *directly or indirectly* with residents of the state. 'With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from [their] laws is an indirect one, however, does not make [those laws] any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with [such states] to justify a requirement that he defend [there].' [. . . ¶] A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. *If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state."* (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 902; italics added.)

And the nation's high court has similarly spoken.

■ "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence *if the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly*

*defective merchandise has there been the source of injury to its owner or to others.* The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286, 297 [62 L.Ed.2d 490, 501]; italics added.)

■ And contrary to Yamaha Japan's argument: "One of the recognized bases for jurisdiction in California arises when the defendant has caused an 'effect' in the state by an act or omission which occurs elsewhere." (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

■ We also find persuasive the above-noted cases of *Dotterweich* v. *Yamaha Intern. Corp., supra,* 416 F.Supp. 542 and *Yoder* v. *Yamaha International Corporation, supra,* 331 F.Supp. 1084, which concerned (1) Yamaha Japan and Yamaha USA, (2) factual-legal contexts nearly identical to those of the case before us, and (3) whether this nation's courts might acquire jurisdiction over Yamaha Japan in products liability actions.

In *Yoder* the court, applying the above-noted rule and rationale of *Buckeye Boiler Co.* v. *Superior Court,* concluded that "the economic reality of Yamaha [Japan's] transactions with Yamaha [USA] lead to the inescapable conclusion that Yamaha [Japan] does business in California and is, therefore, amenable to service of process there." (331 F.Supp., p. 1087.) In *Dotterweich* the court, by reference to other authority, stated: " 'We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.' " The court continued: "Minnesota has an interest in providing a forum for an injured resident to bring an action against a non-resident manufacturer in a products liability action. . . . If plaintiff cannot sue the manufacturer in Minnesota, his alternative may be to bring an action in Japan. This solution does not seem reasonable since plaintiff was injured in Minnesota by a product that defendant manufacturer placed in the stream of commerce and from which it received the protection of Minnesota law and substantial revenues. . . . The court concludes that the requisite minimal contacts exist for the exercise of jurisdiction by this court and that such a result is 'consistent with fair

play and substantial justice and does not violate federal due process.'" (416 F.Supp., pp. 548-550.)

By reason of all of the foregoing we conclude that the order quashing service of summons must be reversed.

Reversed.

Racanelli, P. J., and Newsom, J., concurred.