[No. F014416. Fifth Dist. May 18, 1992.]

KEVIN SOSINSKY et al., Plaintiffs and Appellants, v.
ALLEN R. GRANT et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Part II.

1550

COUNSEL

Meyer & Mitchell, Daniel L. Mitchell, Jack Leavitt, and Debra A. Hayes for Plaintiffs and Appellants.

Henry H. Rossbacher, Tracy W. Young, Hansen, Boyd, Culhane & Watson, David E. Boyd and James J. Banks for Defendants and Respondents.

OPINION

ARDAIZ, J.—This case presents the issue of whether a court may properly take judicial notice of the truth of factual findings made by a judge who sat as a trier of fact in a previous case. We hold that the court may not take judicial notice of the truth of those factual findings.

Appellants Kevin Sosinsky, Ernest Green, and Brett Speer, each of whom was a plaintiff in a civil action against respondents Allen R. Grant, Carolyn M. Grant, and Grant Construction Company (hereinafter the Grants), appeal a May 29, 1990, judgment entered against them and in favor of the Grants following the superior court's order granting a motion of the Grants for summary judgment.

Appellant Speer also appeals a July 27, 1990, judgment entered against him and in favor of respondents Harold C. Wright, Brad L. Walter, and Wright & Britton, a partnership (also defendants in the superior court, and

hereinafter the Wright defendants), following the superior court's order granting a motion of the Wright defendants for summary judgment.

We (1) affirm the superior court's May 29, 1990, judgment against Sosinsky, Green, and Speer, and in favor of the Grants, and (2) affirm the superior court's July 27, 1990, judgment against Speer and in favor of the Wright defendants.

### PROCEDURAL HISTORY

In January of 1985 the Grants brought a civil action (Stanislaus County Superior Court action No. 204488) against James C. Brooks and three other defendants. The Grants alleged, inter alia, that Brooks defrauded the Grants into buying the Eagle Chevrolet dealership in Modesto by representing that Eagle had a net worth of $254,430, whereas Eagle actually had a negative net worth. In May of 1986 the Grants filed a second amended complaint in action No. 204488, this time naming Brooks and 12 other defendants, including Sosinsky, Green, and Speer.

Sosinsky, Green, and Speer were named in two of the nine causes of action of the No. 204488 second amended complaint. The third cause of action, for fraud, alleged that Speer and Sosinsky "devised a fraudulent scheme and plan . . . to offer Eagle for sale to any economically sound, unsuspecting party, such as Grant, based upon the preparation and presentation of financial information, fraudulently inflated to cause Eagle to appear to have a value substantially greater than it actually had." It also alleged that Speer and Green "intentionally disrupted the operations of Eagle, to prevent plaintiffs from discovering the true net worth of Eagle." The ninth cause of action, for "Violation of, and Conspiracy to Violate, the Racketeering Influenced and Corrupt Practices Act [(RICO)] 18 USC §§ 1961, 1964(c)," alleged that Speer, Sosinsky, Green and others "devised the unlawful plan and scheme described herein (the illegal enterprise), and in anticipation of the sale of Eagle to plaintiffs, conspired in this unlawful plan and scheme, to falsely and fraudulently cause Eagle to appear financially solvent, then to sell Eagle to an unsuspecting and innocent purchaser, such as the plaintiffs, at an inflated value, based upon fraudulent representations of the true net worth of Eagle." It goes on to allege that Speer, Sosinsky, Green and various other defendants had a "plan and scheme . . . to cause Eagle to fail, then to obtain the Chevrolet franchise free of any of the substantial debts that had been incurred by Eagle."

The case was removed to the United States District Court for the Eastern District of California. The RICO defendants, including Sosinsky, Green, and

Speer, successfully convinced the federal court that a civil RICO cause of action must allege a "pattern of racketeering activity," and that the ninth cause of action of the second amended complaint merely alleged a "single scheme" and therefore did not adequately allege a RICO violation. The federal court dismissed the ninth cause of action without leave to amend for failure to state a claim upon which relief can be granted, expressly noted that "[t]he remaining causes of action are before the court pursuant to pendent jurisdiction," and dismissed the pendent causes of action as well "without prejudice to their refiling in state court." The federal court's ruling was dated October 1, 1986.

In March of 1987 the Grants filed a third amended complaint in action No. 204488 in the Stanislaus County Superior Court. The third amended complaint did not name Sosinsky or Green as defendants. Speer was named as a defendant in the third cause of action of the third amended complaint, and the allegations against him were substantially the same as the allegations made against him in the second amended complaint's third cause of action for fraud. The third amended complaint also named Speer as a defendant in a fourth cause of action for conspiracy. The fourth cause of action incorporates the allegations of the third cause of action and essentially mirrors the allegations of the third cause of action.

In April of 1987 in Stanislaus County Superior Court action No. 223216, Sosinsky sued the Grants and the Wright defendants for malicious prosecution. The Wright defendants were the attorneys who represented the Grants as plaintiffs in action No. 204488, the action alleged to have been brought maliciously by the Grants against Sosinsky. A first amended complaint in No. 223216 was filed in November of 1987 and eliminated other causes of action which had accompanied the malicious prosecution cause of action in the original complaint.

In June of 1987 Green sued the Grants and the Wright defendants for malicious prosecution in action No. 224241. Green's first amended complaint, which eliminated all causes of action other than the one for malicious prosecution, was filed simultaneously with Sosinsky's first amended complaint in November of 1987.

In October of 1987 Speer sued the Grants and the Wright defendants for malicious prosecution in action No. 227607. Speer's first amended complaint, which eliminated all causes of action other than the one for malicious prosecution, was filed simultaneously with Sosinsky's first amended complaint in No. 223216 and with Green's first amended complaint in No. 224241 in November of 1987.

In 1988 the Grants' action No. 204488 against Brooks, Speer and others went to trial. The Grants lost, and then appealed from their adverse judgment.

In May of 1989 the malicious prosecution actions brought by Sosinsky (223216), Green (224241) and Speer (227607) against the Grants and the Wright defendants were ordered consolidated.

In February of 1990, three summary judgment motions, all noticing hearings for March 22, 1990, barely a month prior to the then-scheduled trial date of April 23, 1990, were filed.

One of these was a motion by the Grants seeking summary judgment in their favor and against Sosinsky in No. 223216, against Green in No. 224241, and against Speer in No. 227607. This motion was granted, disposing of all issues between plaintiffs/appellants Sosinsky, Green and Speer, and defendants/respondents the Grants, and leading to one of the judgments (the May 29, 1990, judgment) now being contested in this appeal.

Another was a motion by the three Wright defendants seeking summary judgment in their favor and against Sosinsky in No. 223216, against Green in No. 224241, and against Speer in No. 227607. This motion was granted only as against plaintiff/appellant Speer in No. 227607, and disposed of all issues between plaintiff/appellant Speer and defendants/respondents the Wright defendants in No. 227607, and led to the other judgment (the July 27, 1990, judgment) now being contested by appellant Speer in this appeal.

The third motion was a separate motion by Brad L. Walter, one of the three Wright defendants, for judgment in his favor and against Sosinsky in No. 223216, against Green in No. 224241, and against Speer in No. 227607. This motion was denied.[1] The denial of a motion for summary judgment is not an appealable order (Code Civ. Proc., § 437c, subd. (*l*), and the propriety of this ruling is not an issue in this appeal.

---

[1]The motion of defendant Walter, an associate of attorney Wright, presented the theory that Walter could not be held liable for malicious prosecution because he was an employee of attorney Wright and could take no legal actions on behalf of the Grants without Wright's approval. Thus, defendant Walter actually brought two summary judgment motions simultaneously, one in which he alone was the moving party, and one brought by the three Wright defendants, one of whom was Walter.

## PART I

### DISCUSSION

We will address, separately and individually, the superior court's ruling on the Grants' summary judgment motion and on the Wright defendants' summary judgment motion. First, however, some general principles of law on summary judgment and on malicious prosecution should be reviewed.

■ In *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], the court described as follows the way in which a motion for summary judgment is properly analyzed:

"Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] [Second], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in [the] movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . . A sufficient motion cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings. [Citations.]"

■ An appellate court reviewing a summary judgment determines upon a de novo examination whether there was no genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. (*White Motor Corp.* v. *Teresinski* (1989) 214 Cal.App.3d 754, 760 [263 Cal.Rptr. 26].) If the trial court has erred, either in failing to find a triable issue of fact where there is one, or in failing to apply undisputed facts to a correct principle of law, then the judgment must be reversed. (*Ibid.*) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ And in *Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777, 782 [205 Cal.Rptr. 62], the court noted:

"In examining the sufficiency of the declarations and other supporting papers filed in connection with the motion, we consider the respondents' papers strictly to determine if they establish their right to judgment by conclusively negating a necessary element of appellants' cause of action, and we construe appellants' declarations liberally to determine if appellants have established the existence of triable issues of fact. (*Tool Research & Engineering Corp.* v. *Henigson* (1975) 46 Cal.App.3d 675, 678 [120 Cal.Rptr. 291]; see also *McKinney* v. *County of Santa Clara* [(1980)] 110 Cal.App.3d 787, 794 [168 Cal.Rptr. 89].) In a malicious institution proceeding, we consider depositions, documents, and records before the trial court at the hearing on the motion in the same manner. (*Tool Research & Engineering Corp.* v. *Henigson, supra,* at p. 679; see [Code Civ. Proc.,] § 437c, subd. (b).) Doubts as to the propriety of granting the motion are resolved against the moving party. (*McKinney* v. *County of Santa Clara, supra,* at p. 794.) Finally, the moving party has the burden of proving the absence of any triable issue of fact even though the burden of proof as to the particular issue may rest with the resisting party at the trial. (*Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38].)"

Papers in support of and in opposition to a motion for summary judgment may consist of "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b).)

In order to establish the malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate " 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498], quoting *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) Reliance upon the advice of counsel, in good faith and after full disclosure of the facts, customarily establishes probable cause. (*Pond* v. *Insurance Co. of North America* (1984) 151 Cal.App.3d 280, 288 [198 Cal.Rptr. 517]; *Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547, 569, fn. 7 [264 Cal.Rptr. 883]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 449, pp. 533-534.) "Probable cause may be established by the defendants in a malicious institution proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer." (*Lucchesi* v. *Giannini & Uniack, supra,* 158 Cal.App.3d at p. 788; *DeRosa* v. *Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1397 [262 Cal.Rptr. 370].

In *Sheldon Appel Co.* v. *Albert & Oliker, supra,* the court held that "when . . . there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question whether there was probable cause to institute the prior action is purely a legal question, to be determined by the trial court on the basis of whether, as an objective matter, the prior action was legally tenable or not." (47 Cal.3d at p. 868.) Although *Sheldon Appel* clarified that the existence or nonexistence of probable cause is a legal question to be determined by the court, once the question of what the defendant's factual knowledge was, has been determined, the court also clarified that the question of what the defendant did or did not know is still a question of fact to be determined by the trier of fact.

"When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, *Franzen* [v. *Shenk* (1923)] 192 Cal. 572 [221 P. 932], and similar cases hold that the jury must resolve the threshold question of the defendant's factual knowledge or belief. Thus, when, as in *Franzen,* there is evidence that the defendant may have known that the factual allegations on which his action depended were untrue, the jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding. As Chief Justice Taft's explanation of the probable cause element indicates, however, the jury's factual inquiry into the defendant's belief or knowledge is not properly an inquiry into 'whether [the defendant] thought the facts to constitute probable cause' (*Director General* [v. *Kastenbaum* (1923)] 263 U.S. 25, 28 [68 L.Ed. 146, 148]); when the state of the defendant's factual knowledge is resolved or undisputed, it is the court which decides whether such facts constitute probable cause or not." (47 Cal.3d at p. 881.)

As was stated in *Leonardini,* "the legal tenability standard is the appropriate measure of probable cause to apply to the plaintiff in the former action who does not rely upon advice of counsel as a defense." (*Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at p. 569, fn. 7.)

With these principles in mind, we turn to an examination of the Wright defendants' motion for summary judgment, and then to an examination of the Grants' motion for summary judgment.

## PART II

*The Wright defendants' judgment against Speer**

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1548.

PART III

*The Grants' judgment against Sosinsky, Green, and Speer*

The trial court's May 29, 1990, judgment, insofar as it grants judgment in favor of the Grants and against Speer in No. 227607, was correct for the same reason discussed above in connection with the Wright defendants' motion, i.e., that there was no favorable termination of the Grants' underlying action against Speer (No. 204488) at the time when the Grants' summary judgment motion against Speer in No. 227607 was filed, heard and decided.[2]

Insofar as the May 29, 1990, judgment grants judgment in favor of the Grants and against Sosinsky in No. 223216, and insofar as it grants judgment in favor of the Grants and against Green in No. 224241, it is also correct, although for a different reason.

Sosinsky and Green were, as aforementioned, no longer defendants in the Grants' action No. 204488 when the Grants' third amended complaint in action No. 204488 was filed in March of 1987. Therefore, Sosinsky and Green could not demonstrate, as Speer could, that the Grants' action No. 204488 was still pending against them when the Grants filed their summary judgment motion against Sosinsky (in No. 223216) and against Green (in No. 224241) in February of 1990. But the Grants' motion established that the Grants were entitled to judgment in their favor because their motion presented evidence that the Grants relied in good faith on the advice of counsel in naming Sosinsky, Green and Speer as defendants in the Grants' action No. 204488 alleging fraud in the purchase of the Eagle dealership, and because that evidence was not factually disputed by appellants either with contradicting evidence or with any fact of which the court could properly take judicial notice. As was explained above in the discussion of the law pertaining to malicious prosecution actions, the Grants could establish a good defense to the malicious prosecution action by demonstrating, without any factual dispute, that the tactical decisions about whom to sue and about what to allege were made by them upon the advice of their attorneys, after full and fair disclosure by the Grants to their attorneys, of the facts known to the Grants. (See *DeRosa, supra,* 213 Cal.App.3d at p. 1397.) We have invited appellants to tell this court why the evidence presented by the Grants, if that evidence were assumed to be factually undisputed, would be in any way deficient in meeting the burden of the Grants, as the moving parties, to demonstrate that they are entitled to judgment in their favor as a matter of law. (See Code Civ. Proc., § 437c, subd. (c); *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 338 [282 Cal.Rptr. 368].) Appellants have not pointed out any such deficiency, nor do we see any such deficiency.

---

[2]Discussed in the unpublished portion of this opinion.

The Grants' motion presented a 24-page declaration of Allen R. Grant[3] in which he stated, inter alia:

"In December, 1984 I retained attorney Harold C. Wright and the law firm of Wright & Britton to represent me, my wife, Carolyn Grant, and Grant Construction Company, Inc. in a dispute arising from my attempted purchase of an automobile dealership in Modesto, California called Eagle Chevrolet (formerly 'Best Chevrolet'). As set forth in greater detail hereinbelow, James Brooks, my long time partner in real estate investments, had attempted to sell the insolvent Eagle Chevrolet Dealership to me, my wife and Grant Construction Company, Inc. through the use of misrepresentation and material omissions in oral statements and written documents, including a materially inaccurate Dealer Financial Statement. I had attempted to rescind the purchase contract upon my discovery that the sellers had obtained my signature thereon through fraudulent means, including, but not limited to, falsely representing that Eagle was both profitable, and had a positive net worth when in fact it had a substantial negative net worth and had lost money consistently."

The declaration then goes into more detail about what information Grant gave *to* his attorneys, and about what information Grant received *from* his attorneys. In paragraph 17(f), Grant states that he told attorney Wright that he (Grant) was given a dealer financial statement showing that Eagle had a net worth of $254,430.

"In August 1984, Brooks provided me with a copy of the July 1984, Dealer Financial Statement (Operating Report) which showed that Eagle had a positive net worth of $254,430 as of July 31, 1984 (Exhibit 2 attached hereto). Brooks represented that the July, 1984 Dealer Financial Statement accurately set out the financial condition of the dealership as of July 31, 1984 in all respects."

In paragraph 17(y) Grant relates that he told Wright that he (Grant) relied on this financial statement in buying the Eagle dealership.

"In November, 1984 I received a report from the accountants at Main-Hurdman who had been reviewing the books and records of Eagle Chevrolet. They reported that they had discovered enormous discrepancies between the

[3]Appellants did not dispute the Grants' "material fact" No. 9, supported by paragraph 4 of Allen R. Grant's declaration, that respondent Allen R. Grant was authorized to act on behalf of respondents Carolyn M. Grant and Grant Construction Company, Inc., and that he was acting on behalf of himself, Carolyn M. Grant and Grant Construction Company, Inc.

Dealer Financial Statement upon which I had relied and the books of the dealership. The trial balance prepared by Main-Hurdman at my request showed that Eagle had a net worth of *minus* about $657,000, meaning that the July Dealer Financial Statement *upon which I had relied in buying the dealership* was overstated by nearly $913,000." (Italics added.)

Grant also states, at paragraph 12 of his declaration and with regard to his dealings with his attorney Harold Wright:

"Prior to my discussions with Mr. Wright, I was entirely unfamiliar with the legal requirements to establish a civil RICO violation or an allegation of fraud. At all times, as I am not an attorney, I relied in good faith on my counsel, Harold Wright's representation to me that the facts as known to him, including those disclosed by me, would constitute good cause for allegations of fraud and of a civil RICO violation."

Appellants did not present any actual evidence in opposition to the Grants' motion, but rather asked the court to take judicial notice of certain documents that had been filed in action No. 204488.[4] Evidence Code section 452 states:

"Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451:

---

[4]Appellants' request for judicial notice requested that the superior court "take judicial notice, pursuant to Evidence Code Section 452(d) of the following documents . . . .": (A) the complaint in Grant et al. v. Brooks et al. (case No. 204488); (B) James C. Brooks' cross-complaint in action No. 204488); (C) Brooks's answer to the Grants' complaint in No. 204488; (D) the Grants' second amended complaint in action No. 204488; (E) an order sustaining demurrers to the second amended complaint in action No. 204488; (F) the Grants' third amended complaint in action No. 204488; (G) the August 26, 1988, judgment in action No. 204488; (H) several pages of a transcript of a March 29, 1988, hearing on a motion in action No. 204488 at which the court heard oral argument; (I) this court's December 21, 1988, order summarily denying a petition by the Grants for a writ of mandate to vacate a superior court order made in action No. 204488; (J) an August 26, 1988, "Statement of Decision for James C. Brooks" in action No. 204488; (K) another August 26, 1988, "Statement of Decision" in action No. 204488; (L) an August 26, 1988, minute order in action No. 204488; (M) an August 26, 1988, "Proposed Statement of Decision" (signed by Judge Rose and filed on that same date) in action No. 204488; (N) "Continental Paragon Corp. and Brett Speer's Statement of Decision," dated August 26, 1988, in action No. 204488; (O) a November 18, 1988, "Order Granting CPC and Speer's Motion for Attorney's Fees as an Element of Costs" in action No. 204488; and (P) 22 pages of oral argument on a motion made by defendants Continental Paragon Corporation and Brett Speer in action No. 204488. Only six of these sixteen items, specifically items G, H, J, K, M, and N, were cited by appellants in appellants' Code of Civil Procedure section 437c, subdivision (b) separate statement as items upon which appellants were relying to attempt to dispute appellants' factual showing that Allen Grant informed attorney Wright in good faith of all facts known to the Grants concerning their attempt to purchase the Eagle dealership.

"(a)   The decisional, constitutional, and statutory law of any state of the United States and the resolutions and private acts of the Congress of the United States and of the Legislature of this state.

"(b)   Regulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States.

"(c)   Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States.

"(d)   *Records of (1) any court of this state* or (2) any court of record of the United States or of any state of the United States.

"(e)   Rules of court of (1) any court of this state or (2) any court of record of the United States or of any state of the United States.

"(f)   The law of an organization of nations and of foreign nations and public entities in foreign nations.

"(g)   *Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute.*

"(h)   *Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.*" (Italics added.)

The Comment by the Assembly Committee on Judiciary on subdivisions (d) and (e) of Evidence Code section 452 states (29B West's Ann. Evid. Code (1966 ed.) p. 351):

"*Court records and rules of court.* Subdivisions (d) and (e) provide for judicial notice of the court records and rules of court of (1) any court of this State or (2) any court of record of the United States or of any state, territory, or possession of the United States. See the broad definition of 'state' in Evidence Code § 220. So far as court records are concerned, subdivision (d) states existing law. Flores v. Arroyo, 56 Cal.2d 492, 15 Cal.Rptr. 87, 364 P.2d 263 (1961). While the provisions of subdivision (c) of Section 452 are broad enough to include court records, specific mention of these records in subdivision (d) is desirable in order to eliminate any uncertainty in the law on this point. See the Flores case, *supra.*

"Subdivision (e) may change existing law so far as judicial notice of rules of court is concerned, but the provision is consistent with the modern

philosophy of judicial notice as indicated by the holding in Flores v. Arroyo, supra. To the extent that subdivision (e) overlaps with subdivisions (c) and (d) of Section 451, notice is, of course, mandatory under Section 451." *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496 [364 P.2d 263].)

In *Flores, supra,* the California Supreme Court stated: "Courts take judicial notice of the public and private official acts of the judicial departments of this state and of the United States and the laws of the several states of the United States and the interpretation thereof by the highest courts of appellate jurisdiction of such states." (56 Cal.2d at p. 496.) The court in *Flores* held that a judgment that had been entered in case A could subsequently be judicially noticed by a judge hearing a demurrer in case B, even though the case A judgment was not mentioned in the case B complaint.

In the present case, the Grants' motion for summary judgment made no contention that the case No. 204488 documents which the appellants asked the court to take judicial notice of did not exist. Therefore, the appellants' request that the court take judicial notice of these documents did not serve to create any factual dispute about any of the "facts" presented by the Grants in support of the Grants' motion for summary judgment. Appellants instead attempted to dispute the Grants' showing that Allen Grant informed attorney Wright of all material facts known to the Grants by calling the court's attention to six of the documents from case No. 204488.[5] Although appellants' request for judicial notice did not expressly ask the court to take judicial notice of any particularly identified "fact" or "facts," appellants argued below, just as they do now on appeal, that the trial court should have taken judicial notice of various "facts" appearing in the various statements of decision in case No. 204488.

The superior court appears to have made no express ruling on appellants' request for judicial notice, which was objected to by the Grants. However, we need not dwell on the legal effect of a lack of a ruling on appellants' request for judicial notice. As we shall explain, even if the court did take judicial notice of the case No. 204488 documents, those documents did not demonstrate the existence of a triable issue of fact, and therefore the court's granting of the summary judgment motion was correct.

We conclude the superior court judge did not take judicial notice of the truth of various findings made by the trial judge in case No. 204488 because if he had done so, he would have denied the motion. For example, appellant's exhibit J is a statement of decision in action No. 204488 in which the trial judge in No. 204488 made the factual finding that "there was no

[5]See footnote 4, *ante.*

reliance by Grant on the financial statements . . . ." This finding is in conflict with paragraph 17(y) of Grant's above quoted declaration in support of the motion for summary judgment, in which Grant states that he did rely on the financial statement in making the decision to purchase the dealership. Thus, if the court had taken judicial notice of the truth of the No. 204488 finding, that "fact" would have demonstrated a conflict with Grant's declaration stating that he did so rely. His alleged good faith in telling his attorney that he did so rely would not be undisputed, and the motion would have been denied.[6]

Appellants' failure to expressly request the court to take judicial notice of any particularly identified "fact" or "facts," and their failure to particularly identify, in their Code of Civil Procedure section 437c, subdivision (b) response,[7] any particular factual finding by the trial judge in No. 204488 which they wanted the superior court to take judicial notice of the truth of, are two omissions which by themselves might, in this case, possibly justify the granting of the Grants' summary judgment motion. But even if the court had ferreted out the particular factual findings from case No. 204488 that appellants now contend demonstrate that the Grants are not entitled to judgment, we hold that the motion for summary judgment was still properly granted because we hold that judicial notice could not properly be taken of the truth of the factual findings of the trial judge in case No. 204488.[8]

---

[6] We need not dwell on the other "facts" which appellants now contend that the trial court should have judicially noticed the truth of. If the court could properly have taken judicial notice of the truth of the factual findings made by the trial judge in action No. 204488, then summary judgment should have been denied, and that if the court could not properly take judicial notice of the truth of those factual findings, then summary judgment was properly granted.

[7] Subdivision (b) of the summary judgment statute, Code of Civil Procedure section 437c, states in relevant part: "The opposition papers shall include a separate statement which responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts which the opposing party contends are disputed. *Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.* Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (Italics added.) This "reference to the supporting evidence" should be much more specific than just the listing of six documents. In the present case, it should have included references to page and line numbers for each of these documents. See, for example, *Blackman* v. *Burrows* (1987) 193 Cal.App.3d 889, 895-896 [238 Cal.Rptr. 642], and *United Community Church* v. *Garcin, supra,* 231 Cal.App.3d at page 336.

[8] We emphasize that we are dealing here with the propriety of the taking of judicial notice of the truth of a factual finding made by a judge sitting as a trier of fact. We are *not* here concerned with such things as the taking of judicial notice of the truth of statements in a court order stating that a particular individual was present at a hearing, or that the hearing took place on a certain date, or that the court in fact made a particular ruling.

■ It is the consequence of judicial notice that the "fact" noticed is, in effect, treated as true for purposes of proof. "Under the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required. Judicial notice is thus a substitute for formal proof. [Citation.]" (1 Witkin, Cal. Evidence (3d ed. 1986) § 80, p. 74.) Therefore, a finding of fact that was judicially noticed would be removed as a subject of dispute and would be accepted for evidentiary purposes as true. The effect would be that without resort to concepts of collateral estoppel or res judicata that would litigate whether the issue was fully addressed and resolved, a finding of fact would be removed from dispute in the other action in which it was judicially noticed.

2 Jefferson's California Evidence Benchbook (2d ed. 1982) states at section 47.2, page 1757:

"What is meant by taking judicial notice of court records? There exists a mistaken notion that this means taking judicial notice of the existence of facts asserted in *every document* of a court file, including *pleadings* and *affidavits*. However, a court *cannot* take judicial notice of *hearsay allegations* as being true, just because they are part of a court record or file. A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the *truth* of facts asserted in documents such as orders, **findings of fact** and conclusions of law, and judgments." (Italics in original, bold emphasis added.)

The above quoted language, which we shall refer to as "the Jefferson text" or just "the text," has been generally cited and/or followed in numerous cases, including *Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918]; *Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426]; *In re Tanya F.* (1980) 111 Cal.App.3d 436, 440 [168 Cal.Rptr. 713]; *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 46 [170 Cal.Rptr. 533]; *People* v. *Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 564 [186 Cal.Rptr. 385]; *Rowe* v. *Dorrough* (1984) 150 Cal.App.3d 901, 905 [198 Cal.Rptr. 131]; *In re David C.* (1984) 152 Cal.App.3d 1189, 1205 [200 Cal.Rptr. 115]; *Garcia* v. *Sterling* (1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349]; *Bach* v. *McNelis* (1989) 207 Cal.App.3d 852, 865 [255 Cal.Rptr. 232]; *Cote* v. *Henderson* (1990) 218 Cal.App.3d 796, 802 [267 Cal.Rptr. 274]; and *Magnolia Square Homeowners Assn.* v. *Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1056 [271 Cal.Rptr. 1].

■ But that portion of the Jefferson text which states that judicial notice may be taken *of the truth of* findings of fact does not appear to have been critically analyzed in any of the above cited cases. We find no sound legal

basis for that particular portion of the rule, and we decline to follow it here. While we have no quarrel with the fact that a judge, after hearing a factual dispute between litigants A and B, may choose to believe A, and make a finding of fact in A's favor, and while we have no quarrel that at some subsequent time it may be proper to take judicial notice *that the judge did in fact make that particular finding* in favor of A, the taking of judicial notice that the judge *made* a particular factual finding is a far cry from the taking of judicial notice that the "facts" found by the judge must necessarily be the true facts, i.e., must necessarily be "the truth." To state this a bit more simply, the taking of judicial notice that the judge believed A (i.e., that the judge ruled in favor of A on a particular factual dispute) is different from the taking of judicial notice that A's testimony must necessarily have been true simply because the judge believed A and not B. Indeed, if A's testimony consisted of "facts . . . that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (Evid. Code, § 452, subd. (h)), there would have been no need for a trial on the dispute between A and B in the first place. The Jefferson text points out, quite correctly, that the assertion of a "fact" in a document that appears in a court file does not necessarily mean that that "fact" is a true "fact." Why this general rule changes for statements of "fact" that are made by a judge in that judge's findings of fact, the text does not address.

In *Day, supra,* the court held that it was improper to take judicial notice of the value of certain stocks simply because an "appendix" to an accounting appearing in an Arizona court file stated that the stocks had a value "of at least the amounts set forth in" the appendix. (50 Cal.App.3d at pp. 913-916.) In *Ramsden, supra,* the court held that it was improper to take judicial notice of "facts" set forth in an arrest report contained in a municipal court file. (71 Cal.App.3d at pp. 878-879.) These appear to be correct applications of principles of judicial notice. In *Tanya F., supra,* the court "took judicial notice only of those facts asserted in orders and findings." (111 Cal.App.3d at p. 440.) The opinion does not recite what those "facts" were, but it does state that the trial court judge took judicial notice only of "the findings which will establish the sequence of events which have already been stipulated to." (*Ibid.*) Thus although *Tanya F.* appears to be contrary to our holding in the present case, the result in *Tanya F.* would apparently have been the same without any taking of judicial notice, since the "facts" that were judicially noticed were also stipulated to.

In *Weiner, supra,* the court stated that "a court may properly take judicial notice of the truth of facts asserted in documents such as orders, findings of fact, conclusions of law and judgments" (114 Cal.App.3d at p. 46), and then

took judicial notice of "pertinent facts stated in" an opinion issued by the Ninth Circuit Court of Appeals. (*Id.* at p. 45.) It reasoned that "the facts stated in an appellate opinion appear to us to possess generally an assurance of accuracy and reliability as great as those associated with the documents specifically mentioned and approved in *Day* v. *Sharp*" (114 Cal.App.3d at p. 46), i.e., an assurance of accuracy and reliability at least as great as the accuracy and reliability of "facts" that are stated in orders, findings of fact, conclusions of law and judgments. Jefferson himself has rejected this conclusion.

"The *Weiner* court's view of judicial notice indicates an erroneous concept of judicial notice and is clearly fallacious and indefensible. Judicial notice substitutes for formal proof only because the matters judicially noticed are *not* reasonably *subject to dispute*." (2 Jefferson, *supra*, at § 47.2, p. 1758.)

We agree with Jefferson's rejection of *Weiner*, but would add that we do not see why "facts" which were *in actuality* the subject of a reasonable dispute would become, after the dispute has been judicially decided, "facts" which could not reasonably be subject to dispute merely because the doctrines of res judicata or collateral estoppel, if properly shown to apply, might operate to prevent further litigation of the dispute. Collateral estoppel and res judicata were not raised in this case. We should expressly note that in the present case no attempt was made by the appellants to apply the doctrine of collateral estoppel to the issue of whether Grant did or did not rely on a financial statement in purchasing the dealership, or to contest any other factual showing made by the Grants in support of their motion. Indeed, appellants Sosinsky and Green were not even parties to action No. 204488 when that case was tried and resulted in the statements of decision upon which appellants now seek to rely, as Sosinsky and Green had been dropped as defendants when the third amended complaint in action No. 204488 was filed. (See generally 7 Witkin Cal. Procedure (3d ed. 1985) Judgment, § 253, p. 691.) We also note that *Gilmore* v. *Superior Court* (1991) 230 Cal.App.3d 416 [281 Cal.Rptr. 343], agrees with Jefferson's view, and this court's view, that judicial notice of the truth of "facts" stated in an appellate opinion's statement of facts is not appropriate.

In *People* v. *Surety Ins. Co.*, *supra*, the court held that judicial notice could not properly be taken of the truth of comments made at a hearing by an attorney and a judge. The opinion states that "[a] court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file." (136 Cal.App.3d at p. 564.) This appears to be a correct application of principles of judicial notice.

But in *Rowe* v. *Dorrough*, *supra*, 150 Cal.App.3d 901, the court took judicial notice of the truth of a statement made eight years earlier by another

court in *Dotterweich v. Yamaha Intern. Corp.* (D.C.Minn. 1976) 416 F.Supp. 542, that "Two of the five directors of [Yamaha Japan] also act as two of the five directors of [Yamaha USA]." (*Id.* at pp. 543-544; *Rowe, supra,* at p. 905.) The *Rowe* court cited the general rule, as set forth in *Day, supra,* and also cited *Weiner, supra.* We disagree with *Rowe* for the same reasons we disagree with *Weiner.*

In *In re David C., supra,* the court held that it was improper to take judicial notice of the truth of "facts" asserted in various reports, prepared by social workers, which were contained in a juvenile court file. (152 Cal.App.3d at p. 1205.) This appears to be a correct application of principles of judicial notice. But the court added that "the judge may take judicial notice of facts asserted in findings and orders in a prior juvenile court proceeding but cannot take judicial notice of the entire juvenile court file." (*Id.* at pp. 1204-1205.) Thus to the extent that *David C.* approves of the taking of judicial notice of the truth of "facts" asserted in findings of fact, we disagree with it.

*Garcia v. Sterling, supra,* 176 Cal.App.3d 17, held that judicial notice could not properly be taken of the truth of statements contained in a deposition transcript that had been filed with a court and thus was a court record. (*Id.* at pp. 21-22.) *Bach v. McNelis, supra,* 207 Cal.App.3d 852, held that the court could not properly take judicial notice of the truth of statements made in a declaration. (*Id.* at pp. 864-866.) *Cote v. Henderson, supra,* 218 Cal.App.3d 796, is a good example of a proper taking of judicial notice of court records. In *Cote* judicial notice was taken of records in a criminal case showing that (1) a felony complaint was filed, (2) a magistrate made a finding that there was sufficient cause to believe that the defendant committed certain violations alleged in the complaint, (3) an information was filed, (4) the defendant entered a plea of nolo contendere to one count, and the remaining counts were dismissed, and (5) the defendant was placed on probation. (*Id.* at pp. 802-803.) In *Magnolia Square, supra,* the court held that it was proper to take judicial notice that a civil first amended complaint made certain allegations, so long as judicial notice of the truth of those allegations was not taken. (221 Cal.App.3d at pp. 1056-1057.) These four cases appear to correctly apply the principles of judicial notice.

A case which appears to us to illustrate the impropriety of taking judicial notice of the truth of a court's factual finding is *People v. Rubio* (1977) 71 Cal.App.3d 757 [139 Cal.Rptr. 750], disapproved on other grounds in *People v. Freeman* (1978) 22 Cal.3d 434, 438-439 [149 Cal.Rptr. 396, 584 P.2d 533]. In *Rubio* the defendant failed to appear for a September 16, 1975, hearing and the court made a finding that " 'defendant fails to appear without sufficient excuse.' " (71 Cal.App.3d at p. 764, italics omitted.) Later, at trial,

the prosecution attempted to demonstrate that the defendant's flight was evidence of his guilt of the crime with which he was charged, and asked the trial court to take judicial notice of the September 16, 1975, minute order, which the trial judge read to the jury. The appellate court decided that judicial notice could not properly be taken of the truth of the September 16, 1975, minute order. This appears to us to be correct. Jefferson states that the reason why judicial notice of the truth of this finding was improper was that it was made without an "adversary hearing":

"Even though judicial notice of the truth of facts asserted in documents in a court record, such as orders, findings of fact and conclusions of law, and judgments, is usually appropriate, it is not appropriate for judicial notice to be taken of the truth of a factual assertion in a *court order*, such as a minute order, if that assertion of fact is *not* predicated upon the court's finding based upon an adversary hearing that involves the question of the existence or nonexistence of such fact. A litigant should not be bound by the court's inclusion in a court order of an *assertion of fact* that such litigant has *not* had the opportunity to contest or dispute. An example of such an assertion of fact placed in a court's *minute order* is found in *People* v. *Rubio* (1977) 71 CA3d 757." (2 Jefferson, *supra*, § 47.2 at p. 1759.)

It appears to us, however, that neither a finding of fact made after a contested adversary hearing nor a finding of fact made after any other type of hearing can be indisputably deemed to have been a correct finding. As we have noted, "[u]nder the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required." (1 Witkin, Cal. Evidence (3d ed. 1986) § 80.) Taking judicial notice of the truth of a judge's factual finding would appear to us to be tantamount to taking judicial notice that the judge's factual finding must necessarily have been correct and that the judge is therefore infallible. We resist the temptation to do so.

Another case illustrating the impropriety of taking judicial notice of the truth of a finding of fact is *People* v. *Tolbert* (1986) 176 Cal.App.3d 685 [222 Cal.Rptr. 313], where a magistrate made an express finding at the preliminary examination that "the prosecuting witness in this case went willingly with Mr. Tolbert." (*Id.* at p. 689.) The superior court took judicial notice of the truth of this finding and used it in sustaining the defendant's demurrer to an amended information. The appellate court reversed. Although *Day* v. *Sharp*, *supra*, quoted Jefferson for the proposition that a court "can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments" (50 Cal.App.3d at p. 914), *Tolbert* cited *Day* for *Tolbert*'s statement that "[o]rdinarily a court may

notice *the existence of* another court's findings of fact and conclusions of law in support of a judgment . . . ." (176 Cal.App.3d at p. 690, italics added.) The *Tolbert* court ruled that the superior court had improperly taken judicial notice of the truth of the magistrate's finding, and pointed out that to do so would be inappropriate because there may be instances in which a magistrate's factual findings are not supported by substantial evidence. (*Ibid.*) We agree with the result in *Tolbert*, and would add that judicial notice of the truth of *any* judicial finding of fact would be inappropriate for the same reason.[9]

Finally, we should briefly mention *Columbia Casualty Co.* v. *Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457 [282 Cal.Rptr. 389], where the court, citing section 47.2 of the Jefferson text, *supra*, states: "Judicial notice of the truth of the content of court records is appropriate only when the existence of the record itself precludes contravention of that which is recited in it, for example where findings of fact, conclusions of law or judgments bind a party for purposes of res judicata or collateral estoppel." (231 Cal.App.3d at p. 473.) First, we note that this statement deviates from what we have referred to above as the Jefferson text. The Jefferson text says nothing about res judicata or collateral estoppel. Second, this statement appears to improperly merge the doctrine of judicial notice with the doctrines of res judicata and collateral estoppel. Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully. (See *Nakash* v. *Superior Court* (1987) 196 Cal.App.3d 59, 67 [241 Cal.Rptr. 578] [res judicata] and *McClain* v. *Rush* (1989) 216 Cal.App.3d 18, 28-29 [264 Cal.Rptr. 563] [collateral estoppel].)

In sum, the superior court properly refused to take judicial notice of the truth of any of the factual assertions appearing in the court documents from action No. 204488 which appellants presented to the court. Appellants, having presented no "facts" which the court could take judicial notice of the truth of, and having presented no evidence in opposition to the Grants' motion for summary judgment, were in essence opposing the Grants' motion

---

[9]See also *Cruz* v. *County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661], and *Joslin* v. *H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 375 [228 Cal.Rptr. 878]: " '[J]udicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.' " *Cruz* and *Joslin* both refused to take judicial notice of the truth of statements made by a deponent at a deposition where the plaintiff opposing the demurrer did not agree that those statements were true.

with no evidentiary showing whatsoever. Since the Grants' motion presented evidence which entitled the Grants to a judgment in their favor, and since the Grants' showing was not factually disputed in any way, the court's granting of the motion was correct.

### DISPOSITION

The July 27, 1990, judgment in No. 227607 in favor of the Wright defendants and against appellant Speer is affirmed.

The May 29, 1990, judgment in favor of the Grants, and against Speer (action No. 227607), against Sosinsky (action No. 223216) and against Green (action No. 224241) is affirmed.

Each party shall bear his or her own costs.

Martin, Acting P. J., and Harris, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 12, 1992.