Filed 3/16/16  Hendrickson v. Woody, LLC CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RONALD W. HENDRICKSON, | D069070 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1307056) |
| WOODY, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside County, Sunshine S. Sykes, Judge.  Affirmed.

Law Offices of Trent Thompson & Associates and Linda J. DeVore for Plaintiff and Appellant.

Hennelly & Grossfeld and Ronald K. Giller for Defendants and Respondents Woody, LLC; J. A. W. Land & Trading Company, LLC; and Donald C. Balfour, as Trustee, etc.

Freeman, Freeman & Smiley, John P. Godsil and Tracy R. Mattie-Daub for Defendants and Respondents Richard H. Gillette and Joan L. Gillette.

Ronald W. Hendrickson appeals from a summary judgment entered in his action for quiet title, after the court determined there was no admissible evidence that Hendrickson holds equitable title to the subject properties. He contends the judgment should be reversed because: (1) the defendants did not establish they hold legal title; (2) the court improperly refused to take judicial notice of the truth of findings made by a bankruptcy court that support Hendrickson's claim to equitable title; (3) the defendants are collaterally estopped from denying Hendrickson was defrauded, and thus holds equitable title; (4) the court abused its discretion in denying Hendrickson's request to amend his complaint, made for the first time at the hearing; and (5) the court applied the "wrong standard" in ruling on the summary judgment motion. We reject each of these contentions and therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Hendrickson's Initial Dealings with Hoorn, Sandmeyer, and Murrieta*

In the late 1990's Hendrickson made his living buying distressed real property, which he would repair and then rent or sell.

In the course of his business, Hendrickson met Antonious Franciscus Tom Ten Hoorn (Hoorn), a real estate agent and loan consultant, and Shirley Sandmeyer, an escrow officer. Hoorn and Sandmeyer worked for John Reidy, who owned Murrieta Mortgage, Inc. (Murrieta). Murrieta was in the business of making real estate loans.

Between August 1999 and March 2001 Hendrickson acquired four properties, which the parties refer to by their street locations: Paradise, Mission Trail, La More, and Carter.

2

B.  *THH Investments, Inc.*

From June 2001 until February 2002,  Hendrickson was incarcerated for a felony conviction, and unable to directly do business.  While incarcerated, Hendrickson trusted Hoorn to manage his business.

Hoorn convinced Hendrickson to form a corporation to hold title to his real property.  Hoorn told Hendrickson this would avoid taxes, allow documents to be signed in Hendrickson's absence, and enable Murrieta to fund loans for the business. Hendrickson agreed and formed THH Investments, Inc. (THH), with Hoorn and himself each being 50 percent shareholders.

C.  *Properties Conveyed To THH*

In January 2004 and May 2005, THH acquired title to properties the parties refer to as Melba and Neer.  Later, Hendrickson conveyed Paradise, Mission Trail, La More, and Carter to THH.  Hendrickson transferred these properties to THH based on Hoorn's fraudulent representations.

D.  *Murrieta Records Trust Deeds Against the Properties*

Between April 2003 and June 2007, trust deeds for Murrieta's benefit were recorded against Carter, La More, Neer, Paradise, Mission Trail, and Melba (collectively, the Properties).

E.  *Deeds In Lieu of Foreclosure to Murrieta*

In August 2008 the Properties were conveyed from THH to Murrieta by deeds in lieu of foreclosure.

3

F.  *Hendrickson Sues Hoorn, Murrieta, Reidy, and Sandmeyer*

In late 2007 Hendrickson became suspicious that Hoorn and Sandmeyer had defrauded him into conveying title of the Properties to THH.  In 2008 Hendrickson sued Hoorn, Murrieta, Reidy, and Sandmeyer (the Hoorn action).  In the original complaint, Hendrickson sought damages for breach of fiduciary duty and "cancellation of deed."  Hendrickson recorded notices of pendency of action (lis pendens) on each of the Properties.

G.  *In 2009 Defendants Loan Money Secured by the Properties to Murrieta*

In 2009 the defendants in this case loaned money to Murrieta, secured by deeds of trust on the Properties, as follows:

1.  J.A.W. Land & Trading, LLC (J.A.W.) is the beneficiary of a trust deed on Neer and Melba.

2.  Woody, LLC (Woody) is the beneficiary of trust deeds on Paradise, Mission Trail, and La More.

3.  Donald C. Balfour, Trustee of the Donald C. Balfour, M.D. Inc. Profit Sharing Plan (Balfour), and Richard H. and Joan L. Gillette (Gillette) are beneficiaries of a trust deed on Carter.

Hendrickson discovered these trust deeds in mid-2009.  The Hoorn action was then pending, and Hendrickson could have brought J.A.W., Woody, Balfour, and Gillette (hereafter, collectively, Defendants) into that action.  However, Hendrickson chose not to add Defendants to the Hoorn action because, as Hendrickson admits, they had "nothing to do" with the fraud alleged in that case.

4

H. *Hendrickson Files a Third Amended Complaint in the Hoorn Action*

In April 2012 Hendrickson filed a third amended complaint in the Hoorn action, captioned, "Third Amended Complaint for Fraud."  That complaint omits the cause of action for cancellation of deed pleaded in the original complaint, and instead only alleges fraud.  Hendrickson concedes the third amended complaint did not state a cause of action for return of the Properties.

I. *Murrieta and Reidy File Bankruptcy*

In May 2012 while the Hoorn action was still awaiting trial, Murrieta filed bankruptcy.  A few weeks later, Reidy also filed bankruptcy.

1. *Murrieta bankruptcy—Defendants acquire title to the Properties*

In Murrieta's bankruptcy, Hendrickson sought relief from the automatic stay so he could continue to pursue claims against Murrieta in the Hoorn action.  In the bankruptcy court, Hendrickson's attorney filed a declaration stating he had no intent to quiet title in the Hoorn action, but only sought money damages.  The bankruptcy court denied Hendrickson's motion for relief from stay, and, as a result, Hendrickson dismissed Murrieta from the Hoorn action.

Hendrickson did not pursue an adversary action against Murrieta in the bankruptcy court, and he never sought title against Murrieta in either the Hoorn action or in bankruptcy court.[1]

---

[1]     At the hearing on the summary judgment motion, Hendrickson's lawyer stated that in hindsight, the "smartest thing" would have been to pursue title claims against Murrieta in its bankruptcy case.

The trustee in Murrieta's bankruptcy abandoned the Properties, stating there was "inconsequential or no equity" in each and "administration and/or preservation of the property are burdensome to the bankruptcy estate." Hendrickson did nothing to prevent the trustee's abandonment of the Properties or to inform the trustee that he asserted ownership in them.

After the trustee abandoned the Properties, Murrieta conveyed the Properties (except Melba) to Defendants by deeds in lieu of foreclosure.

2. *Reidy bankruptcy*

In Reidy's bankruptcy, Hendrickson sought relief from the automatic stay so he could continue to prosecute the Hoorn action against him. After the bankruptcy court denied that motion, Hendrickson dismissed Reidy from the Hoorn action and initiated an adversary proceeding against him in the bankruptcy court.[2]

After conducting a trial, the bankruptcy court issued a decision and judgment in Hendrickson's favor. The bankruptcy court found that Hoorn, as president of THH, had encumbered properties Hendrickson originally transferred to THH. These encumbrances were in favor of Murrieta and other entities Reidy owned and operated.[3] The bankruptcy court determined that after Hendrickson discovered these encumbrances, THH's board of directors removed Hoorn as president and revoked his authority. The court found that in 2008 although Reidy knew Hoorn was no longer THH's president, Reidy and Murrieta

---

[2]     The parties agree Reidy was dismissed; however, the record does not contain a copy of that dismissal.

[3]     The bankruptcy court referred to Hoorn as "Tenhoorn."

6

accepted deeds in lieu of foreclosure signed by Hoorn as THH president, transferring the Properties from THH to Murrieta. The bankruptcy court determined that Reidy, Hoorn and Sandmeyer acted together to fraudulently encumber and transfer the Properties to Murrieta. The court entered judgment in favor of Hendrickson against Reidy for $1,305,460, representing the value of properties Hendrickson transferred to THH.

J. *Judgment for Hendrickson in the Hoorn Action*

Meanwhile, in the Hoorn action, the state court conducted a bench trial and in March 2013 entered judgment for Hendrickson against Hoorn and Sandmeyer. The court found that Hoorn and Sandmeyer "planned to take advantage of [Hendrickson's] trust and naiveté in order to defraud him of his property."

The state court entered judgment for Hendrickson in the amount of $1,286,400, representing the fair market value of Mission Trail, Carter, Paradise Lane, Melba, Neer, La More, and other property, and also awarded punitive damages.

K. *Defendants Not Involved in the Hoorn Action Fraud*

Hendrickson admits that the Defendants here— J.A.W., Woody, Balfour, and Gillette—were not involved in any of the fraudulent conduct litigated in the Hoorn action and did not conspire with anyone to take title to the Properties from Hendrickson.[4]

L. *Hendrickson Sues Defendants for Quiet Title*

In June 2013 Hendrickson filed a complaint for quiet title against the Defendants. The operative first amended complaint alleges Defendants took interests in the Properties

---

[4] Without citation to the record, Hendrickson's reply brief asserts, "Subsequent fraud may very well have been aided by Respondents."

subject to lis pendens recorded in the Hoorn action, and "[b]ecause it has been determined [in the Hoorn action] . . . that Hendrickson . . . was defrauded concerning these properties . . . he is entitled to become record owner of the properties . . . ."

M. *Summary Judgment Motion, Opposition, and Ruling*

"'[A] plaintiff in an action to quiet title cannot prevail unless he shows title in himself. If he has no title, he cannot complain that someone else, also without title, asserts an interest in the land. [Citations.] A defendant in such an action may always effectually resist a decree against himself, by showing simply that the plaintiff is without title.'" (*Hohn v. Riverside County Flood Control & Water Conservation Dist.* (1964) 228 Cal.App.2d 605, 613, superseded by statute on other grounds as stated in *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707-1708.)

Defendants moved for summary judgment, asserting there was no admissible evidence establishing an essential element of Hendrickson's quiet title claim, namely, that he holds legal or equitable title in any of the Properties. Defendants asserted Hendrickson had no legal title because he conveyed legal title to THH, which in turn conveyed to Murrieta, which conveyed title to Defendants. Defendants asserted there was no admissible evidence establishing Hendrickson had equitable title because the Hoorn action resulted in a money judgment, which did not affect title to the Properties. Defendants argued that the lis pendens Hendrickson recorded in the Hoorn action were

8

ineffective because that action did not adjudicate the state of Murrieta's title, from which Defendants' title is derived.[5]

Opposing the summary judgment motion, Hendrickson's attorneys filed a request for judicial notice of the Reidy and Murrieta bankruptcy court proceedings, and, in particular the bankruptcy court's decision and judgment against Reidy.

The court granted the motion for summary judgment. The court determined the lis pendens did not affect title because the Hoorn action did not adjudicate title, but instead resulted in a money judgment. The court stated that Hendrickson's claim to equitable title depends upon proof that the 2008 deeds in lieu of foreclosure from THH to Murrieta were fraudulent. However, Hendrickson conceded as an undisputed fact that the Defendants did not commit fraud, and Hendrickson did not offer any admissible evidence that the 2008 deeds in lieu of foreclosure from THH to Murrieta were fraudulent.

In granting summary judgment, the court noted the "key piece of evidence" upon which Hendrickson was relying to prove fraud is the bankruptcy court's decision against Reidy. However, Hendrickson's attorney conceded that decision is not binding on Defendants. Citing *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1567 (*Sosinsky*), the court determined the bankruptcy court's findings that Reidy, Hoorn and Sandmeyer

---

5      In more colloquial language, Defendants' counsel characterized Hendrickson's case as follows: "For whatever reason, plaintiff opted for money judgments. He didn't seek title remedies, and he can't now come back five years after they discovered the fraud and try to push the fraud off on our client[s] to collect his money judgments against other defendants. That's exactly what's happening here."

defrauded Hendrickson is inadmissible hearsay where, as here, it is offered for the truth of its factual findings.

N.  *Judgment and Appeal*

On January 15, 2015, the court entered judgment in favor of Defendants and expunged the lis pendens Hendrickson had recorded against the Properties in connection with this quiet title action.  This appeal timely followed.

DISCUSSION

I.  *SUMMARY JUDGMENT AND THE STANDARD OF REVIEW*

We review a grant of summary judgment de novo.  (*Griffin v. Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 498.)  "We view the evidence in the light most favorable to plaintiff[] as the part[y] opposing summary judgment, strictly scrutinizing defendant['s] evidence in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor." (*Dammann v. Golden Gate Bridge, Highway & Transportation Dist.* (2012) 212 Cal.App.4th 335, 340-341.)

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . .  A defendant [moving for summary judgment] bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a

complete defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*), fns. omitted; see Code Civ. Proc.,[6] § 437c, subd. (p).)

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

A defendant moving for summary judgment must negate each of "plaintiff's theories of liability *as alleged in the complaint*." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) To negate a theory of liability, the defendant must do one of two things: (1) demonstrate that "[o]ne of more of the elements of the cause of action cannot be separately established" or (2) establish "an affirmative defense to that cause of action." (§ 437c, subd. (o).) To show that an element of a cause of action cannot be established, the defendant may present facts which, if undisputed, "conclusively negate" the element (*Aguilar, supra,* 25 Cal.4th at p. 853) or may show "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Id.* at p. 855.)

---

6     All statutory references are to the Code of Civil Procedure unless otherwise specified.

11

Where the moving party has sustained his burden, the plaintiff opposing a motion for summary judgment may not rely on his or her pleadings alone, but must file an opposition to the motion, with admissible evidence setting forth "specific facts" demonstrating a triable issue of material fact exists. (§ 437c, subd. (p).)

In analyzing a motion for summary judgment, both the trial court and the reviewing court follow a three-step process: "'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.'" (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)

A motion for summary judgment must be supported by a "separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed." (§ 437c, subd. (b)(1).) Generally, if a fact is not set forth in the separate statement, we will not consider it. (*City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1238, fn. 4.)

## II. *THE COURT CORRECTLY ENTERED SUMMARY JUDGMENT*

### A. *Quiet Title and Equitable Title*

A quiet title action is one to resolve competing claims to real or personal property. (§ 760.020, subd. (a).) Although ordinarily an action to quiet title cannot be maintained by the owner of equitable title against the holder of legal title, an exception exists where

12

legal title was acquired through fraud. In such a fraud case, the holder of equitable title may bring an action to quiet title as against the legal title holder, who acquired "only bare legal title" and holds legal title as a constructive trustee for the benefit of the equitable title holder. (*Warren v. Merrill* (2006) 143 Cal.App.4th 96, 113-114.)

The limited exception permitting the holder of an equitable interest to maintain a quiet title action against a legal owner is narrow and has been recognized primarily in cases involving fraud or breach of fiduciary duty by the holder of legal title. (See, e.g., *Strong v. Strong* (1943) 22 Cal.2d 540, 545–546 [equitable rights could not be established in quiet title action absent finding of fraud]; *Warren v. Merrill, supra,* 143 Cal.App.4th at pp. 111–112 [judgment quieting title was proper in light of real estate agent's breach of fiduciary duty to purchaser arising from agent's fraudulent procurement of title to property]; see generally 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 667, p. 93 ["plaintiff who attacks the legal title on equitable grounds is in effect contending that the defendant obtained legal title by fraud"].) In sum, a holder of equitable title seeking to quiet title against a holder of legal title must establish fraud that would justify invalidating the defendant's legal title.

B. *In Quiet Title Actions, Plaintiff Must Establish Title*

In a quiet title action, the plaintiff must prove title in himself. "Merely presenting evidence challenging the defendant's title is insufficient." (*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326.) "It is elementary that a plaintiff in an action to quiet title cannot prevail unless he shows title in himself. If he has no title, he cannot complain that someone else, also without title, asserts an interest in the land. [Citations.] A defendant

13

in such an action may always effectually resist a decree against himself, by showing simply that the plaintiff is without title." (*Williams v. San Pedro* (1908) 153 Cal. 44, 49; see *Kunza v. Gaskell* (1979) 91 Cal.App.3d 201, 207 [affirming a quiet title judgment against the appellant where "'[n]o evidence was introduced or offered which would in any way tend to indicate that this appellant was equitably entitled to any interest in this property'"].)

C. *Defendants Met Their Summary Judgment Burden*

Hendrickson's first amended complaint (the Complaint) alleges he should be awarded title to the Properties as the owner of equitable title based on the outcome of the Hoorn action. More specifically, the Complaint alleges (1) each defendant acquired one or more of the Properties by deeds from Murrieta; however, (2) Murrieta acquired title through "actions adjudicated to be fraudulent" in the Hoorn Action; and (3) Defendants were "on notice" of Hendrickson's claim to equitable title "prior to the making and recording" (boldface & underscoring omitted) of their interests by the lis pendens Hendrickson recorded. The Complaint alleges:

> "Because it has been determined by litigation taken to trial that Hendrickson as an individual was defrauded concerning these properties, and because Hendrickson as an individual timely filed the lis pendens documents, he is entitled to become record owner of the properties at this time."

To obtain summary judgment, Defendants were required to demonstrate that Hendrickson could not establish the essential element of equitable title as alleged. (§ 437c, subd. (o).) As explained below, Defendants met this burden by showing: (1) the judgment Hendrickson obtained in the Hoorn action is a money judgment only, which

14

does not affect title; (2) the lis pendens Hendrickson recorded does not affect any property interest in this case; and (3) Hendrickson admits Defendants did not commit fraud.

1. *The Hoorn action did not adjudicate title*

The judgment Hendrickson obtained in the Hoorn action does not establish any ownership interest in the Properties. It is simply a money judgment against individuals (Hoorn and Sandmeyer) who never owned title to the Properties. Indeed, because the court in the Hoorn action awarded Hendrickson damages determined by the fair market value of the Properties, Hendrickson's recovery in the Hoorn action is premised on the fact Hendrickson does *not* own the Properties. Even Hendrickson concedes that recovering the fair market value of the Properties and being awarded title to the same properties is a prohibited double recovery.[7]

Moreover, the lis pendens Hendrickson recorded also does not establish equitable title. A lis pendens is only authorized in actions that affect "title to, or the right to possession of, specific real property." (§§ 405.2, 405.4.) Hendrickson's operative complaint in the Hoorn action does not contain a cause of action affecting title. Hendrickson's *original* complaint there alleged a cause of action against Murrieta for cancellation of deeds. But Hendrickson dismissed Murrieta, and the operative compliant at trial, the third amended complaint, omitted the cause of action for cancellation of deed

---

7    Hendrickson's opposition to summary judgment states, "Defendants apparently make the point that Hendrickson should not receive back the properties and also monetary damages for the properties as well. Hendrickson agrees."

15

and alleged only fraud, seeking money damages alleged to exceed $650,000, plus punitive damages.[8]

As noted, after Murrieta filed bankruptcy, Hendrickson dismissed Murrieta from the Hoorn action. But Hendrickson never prosecuted any proceeding against Murrieta in the bankruptcy court, either for money damages or to contest Murrieta's title to the Properties. Hendrickson's lawyer conceded, "Somewhere along the way . . . Hendrickson's initial request for a court declaration voiding the 2008 Corporate Deeds in Lieu [of foreclosure] was somehow lost."[9]

2. *The lis pendens do not affect title*

A lis pendens recorded in an action that does not involve title has no effect. (*Brownlee v. Vang* (1962) 206 Cal.App.2d 814, 817.) "[A]n action for money damages alone will not support a lis pendens." (*Urez Corp. v. Superior Court* (1987) 190 Cal.App.3d 1141, 1145.) In the Hoorn action, once Hendrickson dismissed Murrieta and filed his third amended complaint alleging only fraud, the lis pendens could not affect title to the Properties. The court did not adjudicate Murrieta's interest in the Properties because Hendrickson dismissed Murrieta, and the judgment Hendrickson obtained

---

[8] The prayer for relief in the third amended complaint included a request for an order "requiring defendants to reinstate plaintiff on the title of the property . . . ." However, a prayer for relief is not part of the cause of action and "the issues involved are determinable from the facts alleged rather than from the prayer." (*Berg v. Investors Real Estate Loan Co.* (1962) 207 Cal.App.2d 808, 815.)

[9] Hendrickson was self-represented in the Reidy bankruptcy proceedings.

16

against Hoorn and Sandmeyer is for money damages only against individuals who never held title.

Because of the lis pendens recorded in connection with the Hoorn action, Defendants took title to the Properties subject to the risk that Murrieta's interest would be proven to be invalid in the Hoorn action. But that risk never came to fruition because Hendrickson dismissed Murrieta from the Hoorn action and title was never adjudicated in that case. (See *Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201, 214 & fn. 14.) In his reply brief, Hendrickson concedes this point, stating, "Appellant acknowledges that the State Court judgment did not give him a right to return of the real properties, so that the lis pendens documents do not confer the typical rights to him which are usually resulting from lis pendens documents."

3. *Hendrickson admits Defendants did not defraud him*

Hendrickson's claim for equitable title depends on evidence that the 2008 deeds in lieu of foreclosure to Murrieta were obtained by fraud. However, as discussed *ante*, neither the judgment in the Hoorn action nor the lis pendens create such a triable issue of fact. Moreover, Hendrickson has admitted that Defendants had "nothing to do" with "the fraud in the Hoorn Action." He also conceded as "undisputed" that "Defendants . . . did not conspire with anyone to take title to the Properties from Hendrickson."

4. *Defendants established their legal title*

Moreover, to the extent Defendants were required to establish a prima facie case that they hold legal interests in the Properties, Defendants did so. Hendrickson's first amended complaint for quiet title alleges that each of the Defendants "made loans

17

secured by one of more of the [Properties]" and "became the owner of record" of such properties "via a recorded Deed-in-Lieu of Foreclosure." Unequivocal admissions such as these in an opposing party's pleadings are treated as judicial admissions and are conclusive. (*Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1079, fn. 10.)[10] Even apart from these judicial admissions, Defendants established the same facts by lodging the relevant trust deeds and deeds in lieu of foreclosure with the superior court, and by listing these facts in their separate statement of undisputed material facts.

D. *Hendrickson Offered No Admissible Evidence of Fraud*

To defeat the motion for summary judgment, Hendrickson had to demonstrate there was a triable issue that legal title to the Properties was obtained through fraud. (See *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 214.) But Hendrickson did not lodge any deposition testimony or discovery responses to establish fraud.[11] Instead, his attorney asked the court to take judicial notice of the "factual findings of the Bankruptcy Court" in Hendrickson's adversary proceeding against Reidy. Counsel stated summary judgment should be denied because "Judge Scott Clarkson in the bankruptcy forum made factual findings in 2013 stating that [Hoorn] had no authority to sign the Corporate Deeds in Lieu [conveying the Properties to Murrieta] and he was not the president of THH when

---

[10]    A judicial admission in a pleading may be contradicted by amending the pleading with a showing of mistake or other excuse for changing the allegations of fact. (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 659, fn. 8.) The record does not show that Hendrickson sought to do so.

[11]    Excerpts of Richard Gillette's deposition merely showed notice of the lis pendens and that he was able to obtain title insurance despite the lis pendens.

18

he signed them."  Hendrickson's attorney added, "Defendants correctly assert that they are not bound by either of the judgments obtained by Hendrickson.  Defendants were not parties to those actions from which the judgments emanated, and Hendrickson did not get an order requiring return of the real properties.  [¶] The lis pendens documents nevertheless imparted notice to Defendants that Hendrickson asserted interests in the real properties and challenged the 2008 Deeds in Lieu of Foreclosure upon which Defendants now rely. . . .  [T]he Honorable Scott Clarkson made findings in 2013 (based on evidence produced at trial) stating that the Deeds in Lieu were signed by a person with no authority to sign them."

However, Hendrickson's reliance on the bankruptcy court's findings to create a triable issue on fraud fails because those findings are inadmissible hearsay.  *Sosinsky*, *supra,* 6 Cal.App.4th 1548 is on point.  The issue in *Sosinksy* was whether, in ruling on a summary judgment motion, a court may properly take judicial notice of the truth of factual findings made by a judge who sat as trier of fact in a previous case.  (*Id*. at p. 1551.)  *Sosinsky* holds that judicial notice may not properly be taken of the truth of such findings.  (*Id*. at p. 1568.)  A court cannot take judicial notice of the truth of some other court's factual determinations because to do so would be tantamount to taking judicial notice that the court's determination must necessarily have been correct and that the court is "infallible."[12]  (*Ibid.*)  In *Sosinsky*, the appellate court affirmed summary judgment

---

[12]    To be distinguished are instances where a court is asked to take judicial notice of findings made in another case as the predicate for invoking res judicata or collateral estoppel.  Whether a factual finding is true is a different question than whether the

19

because the appellants offered no facts which the court could take judicial notice of the truth of, and presented no evidence in opposition to the motion for summary judgment. (*Id.* at pp. 1569-1570.)

Here, the trial court rejected Hendrickson's attempt to create a triable issue of fraud by using the bankruptcy court's findings from the Reidy adversary proceeding. Citing *Sosinsky*, the court stated:

> "The key piece of evidence that Plaintiff is relying on is the adversarial proceeding in the bankruptcy court. Plaintiff asserts in his opposition that the court should consider it as evidence. [Citation]. Yet, he admits that it is neither res judicata or collateral estoppel, or binding on these Defendants. [Citation]. Plaintiff provides no authority that another court's findings are evidence. 'Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time.' ([*Sosinsky*] . . . .)"

The trial court's ruling is correct, and Hendrickson offers no meritorious argument otherwise. Hendrickson's opening brief does not cite or discuss *Sosinsky*. In his reply brief, Hendrickson still ignores *Sosinsky*, even though *Sosinsky* is the centerpiece of the order granting summary judgment, and Defendants' brief cites *Sosinsky* twice.

Instead of discussing *Sosinsky*, Hendrickson cites *Day v. Sharp* (1975) 50 Cal.App.3d 904 (*Day*) and *In re Tanya F.* (1980) 111 Cal.App.3d 436 for the proposition that a court may take judicial notice of the truth of facts asserted in orders, findings of fact, and judgments. However, Hendrickson's reliance on these two cases is unpersuasive. The *Sosinsky* court declined to follow *Day* and *Tanya F.* (among other

---

finding, true or not, may be litigated a second time. (See generally *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1485.)

20

cases) on this issue, stating there is "no sound legal basis" for their holdings on this point. (*Sosinsky, supra,* 6 Cal.App.4th at pp. 1564-1565.)

Hendrickson's reply brief also cites *People v. Tolbert* (1986) 176 Cal.App.3d 685, 690, but that case does not advance Hendrickson's argument because the *Tolbert* court did not analyze the issue, but instead merely citied *Day.* Oddly, Hendrickson also cites *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145, which follows *Sosinsky,* stating, "[F]actual findings in a prior judicial opinion are not a proper subject of judicial notice." (*Kilroy, supra,* 119 Cal.App.4th at p. 148.)

Different panels of this Court have followed *Sosinsky*, finding its reasoning persuasive that judicial notice may not properly be taken of the truth of prior findings made by some other court. (*People v. Munoz* (2005) 129 Cal.App.4th 421, 430 ["While it is proper, when relevant, to take judicial notice of the prior finding, it is improper to take notice of the truth of that finding." (Italics omitted.)]; *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1485 [citing *Sosinsky*].) We discern no compelling reason to disagree with these holdings, and Hendrickson offers none. (*People v. Bolden* (1990) 217 Cal.App.3d 1591, 1598 ["We hesitate to overrule a decision rendered by another panel of this court except for compelling reasons."].)[13]

In his reply brief, Hendrickson contends this refusal to take judicial notice of the truth of the bankruptcy court's findings improperly elevates "form over substance" and violates the rule that summary judgment can be granted only where the opposing party

_____

[13]   For the same reason, the court properly refused to consider as admissible evidence the hearsay statement of assets in Murrieta's bankruptcy petition.

"cannot reasonably obtain needed evidence." In a related argument, Hendrickson complains that Defendants are attempting to defeat summary judgment by a "Gotcha."

These assertions are inaccurate. Summary judgment is an evidentiary motion, and *Sosinsky* has been the law for over 20 years. The evidence upon which Hendrickson was relying to create a triable issue of equitable title was unquestionably inadmissible under the post-*Sosinsky* line of cases. Even now on appeal, in two separate briefs, Hendrickson fails to cite *Sosinsky,* much less explain why we should disagree with its holding. Under well-established law, an opposition such as Hendrickson submitted in the trial court, that contains no admissible evidence creating a triable issue but simply asserts a right to jury trial on the issues involved, is insufficient to avoid summary judgment. (*Shepherd v. Jones* (1982) 136 Cal.App.3d 1049, 1062.) Moreover, Defendants satisfied their burden by presenting undisputed facts that conclusively negated Hendrickson's alleged theory of acquiring equitable title. It was therefore not incumbent upon them to additionally show Hendrickson could not reasonably obtain needed evidence. (*Aguilar, supra,* 25 Cal.4th at p. 853.)

E. *Hendrickson Waived or Forfeited His Collateral Estoppel Argument*

In the trial court, Hendrickson's attorneys acknowledged that Defendants were *not* bound by either of the Hoorn and Reidy judgments. Specifically, Hendrickson's opposition to summary judgment states these judgments "do not bind Defendants," and "Defendants correctly assert that they are not bound by either of the judgments obtained by Hendrickson. Defendants were not parties to those actions from which the judgments emanated, and Hendrickson did not get an order requiring return of the real properties."

22

Now on appeal, Hendrickson takes the opposite position. He contends the court should have applied collateral estoppel to bind Defendants to the factual determinations of fraud made in Reidy's bankruptcy proceeding. As explained *post*, Hendrickson is precluded from shifting positions in this manner.

When a motion for summary judgment has been granted, "[t]he opposing party may not raise an issue for the first time on appeal." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465; see *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) These ordinary rules of waiver or forfeiture take on added significance here because Hendrickson is not only attempting to assert an argument for the first time on appeal, but that new argument is inconsistent with the position he took in the trial court, and upon which the trial court relied in ruling on the motion.

In granting summary judgment, the trial court noted that Hendrickson "admits" the bankruptcy court judgment "is neither res judicata or collateral estoppel or binding on these Defendants." The court's order granting summary judgment added that Hendrickson had failed to provide "any analysis of res judicata or collateral estoppel." It is, therefore, particularly inappropriate for Hendrickson to complain on appeal that the trial court erred in not applying collateral estoppel—when Hendrickson's opposition papers conceded the very issue he now disputes. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.)

On appeal, Hendrickson argues that "[c]ontrary to the language in The Ruling, Hendrickson did not admit that collateral estoppel fails to be binding on Respondents."

(Boldface omitted.) He adds, "Hendrickson's position has always been that collateral estoppel is binding on Respondents."

Hendrickson's assertion is untenable. Hendrickson's opposition conceded that the judgments in the Hoorn action and Reidy bankruptcy "do not bind Defendants" and that "Defendants correctly assert that they are not bound by either of the judgments obtained by Hendrickson." Although he did not use the words "res judicata" and "collateral estoppel," the only reasonable interpretation is that doctrines which potentially could "bind" Defendants, i.e., res judicata and/or collateral estoppel, do not apply. Indeed, in his opening brief, Hendrickson concedes "[t]he topic of the offensive use of collateral estoppel was not briefed . . . ."[14]

The subject of res judicata and collateral estoppel first arose at the hearing. The court asked Hendrickson's attorney whether she was taking the position that the bankruptcy order was "entitled [to] res judicata." Hendrickson's counsel replied, "It's clearly entitled to be res judicata just by the general principles of res judicata." When the court asked counsel to unravel that circular argument by citing legal authority, counsel contradicted herself, replying , "I don't think we can use res judicata. We'd have to use

_____

14    Hendrickson suggests he did not discuss collateral estoppel in the trial court because his opposition to the summary judgment motion was required to be limited to issues raised in the moving papers. Hendrickson is incorrect. His opposition was not so limited. Under section 437c, subdivision (b)(3), he could have raised any additional facts which he contends are disputed, and by necessary implication, any argument related to such additional or different facts. The rule Hendrickson obliquely alludes to, which limits the scope of responsive arguments, generally prohibits new issues from being raised in *reply* papers (not opposition papers) because the opponent lacks an opportunity to meaningfully respond. (See generally *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

collateral estoppel . . . . So right off the bat I couldn't say that you will use the principles of res judicata. It would have to use collateral estoppel, which I think would be allowed in an equitable circumstance like this."

Hendrickson's counsel conceded she had no legal authority "handy" to support her assertion that collateral estoppel applies, but stated, "if you want to continue the hearing, I will look it up and submit it to you." The court declined the invitation for more briefing.

Hendrickson contends this colloquy is sufficient to preserve the collateral estoppel issue for appeal. Hendrickson's briefs contain an extensive discussion in an attempt to establish now, for the first time on appeal, that Defendants are collaterally estopped to contest the fraud findings in Reidy's bankruptcy because Defendants are "privies" of Reidy or Murrieta.

The fundamental principle that governs any claim of waiver or forfeiture on appeal is fairness. "'[I]t would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.'" (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Hendrickson's assertion of collateral estoppel at the hearing—an argument counsel made, in her own words, "right off the bat"—does not avoid waiver or forfeiture of the issue on appeal. Counsel's fleeting reference to collateral estoppel at the hearing was

25

made without any supporting legal authority, factual support, analysis, or meaningful discussion. Moreover, in opposition papers, Hendrickson had taken the opposite position, stating Defendants were *not* bound by the prior judgments. Asserting collateral estoppel for the first time at the hearing was insufficient to give Defendants' attorney any meaningful opportunity to respond, nor could it have given the trial court the legal and factual background necessary to make an informed ruling on the issue. As the trial court accurately stated in its order, "[n]or is there any analysis of res judicata or collateral estoppel."

F. *There Was No Timely Request to Amend the Complaint*

At the hearing, Hendrickson's lawyer made a request to amend the complaint, stating: "What should have happened, I guess we should have filed an amended complaint. I was in the process of getting ready to do that when we received the summary judgment. So we just thought we will go ahead and go through the summary judgment and see what happens, but we can amend the complaint. The plaintiff should have the opportunity to do so." The court replied, "If there was going to be an amended complaint, it should have been done prior to this hearing because certainly this hearing can affect the overall outcome of the case if the MSJ [motion for summary judgment] is granted." The subject was not raised again, and Hendrickson never gave the trial court any details or specifics about the proposed amended complaint.

In his brief, Hendrickson explains that his "view of the case had changed somewhat due to items learned through discovery." He admits that he did not give any specifics about the proposed amended complaint at the hearing, but now on appeal

26

Hendrickson states he wanted to add a cause of action "under the Uniform Fraudulent Transfer Act, alleging that [Defendants] are improper transferees. And, Hendrickson wanted to make it clear that he does not rely on his lis pendens documents as the gravamen of his position."

In his opening brief, Hendrickson concedes that his proposed amended complaint "should have been filed before the summary judgment hearing." However, in his reply brief, Hendrickson asserts the court erred in denying leave to amend.

The court did not abuse its discretion in not allowing Hendrickson to file an amended complaint. Hendrickson's vague request to amend was too little, too late. "'[A] plaintiff wishing to "rely upon unpleaded theories to defeat summary judgment" must move to amend the complaint before the hearing.'" (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1275; *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1186.)[15]

G. *The Court Did Not Apply "The Wrong Standard"*

Hendrickson contends the court applied the "wrong standard" by making him prove his "entire case" to defeat summary judgment. He notes that he *alleged* in his complaint that he was the successor in interest to THH. Relying on deposition testimony

---

[15] To be distinguished is the situation where summary judgment is granted on the grounds the complaint itself is legally insufficient, but it appears from the materials submitted in opposition to the motion that the plaintiff could state a cause of action. In those circumstances, the motion for summary judgment resembles a motion for judgment on the pleadings, and it is appropriate to entertain a motion for leave to amend the complaint at the hearing or any time before entry of judgment. (See *Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1384-1385.)

27

that he was formerly a 50 percent shareholder of THH and also an officer and director, Hendrickson asserts, "It is certainly reasonable to assume that Hendrickson is a successor-in-interest to the corporation." There are at least two fatal errors in this argument.

First and foremost, in responding to the Defendants' separate statement of undisputed material facts, Hendrickson admitted there was *no evidence* to support his claim he was the successor in interest to THH. He admitted it was "[u]ndisputed" that "[t]here is no evidence that Hendrickson is the successor in interest to THH; instead Hendrickson claims that he is successor in interest to THH because he was defrauded into forming THH." Second, Hendrickson never raised this issue in opposing the motion for summary judgment in the trial court. In the trial court, Hendrickson argued the findings of the bankruptcy court were admissible evidence showing that Murrieta knew the deeds it acquired in 2008 from THH were executed by Hoorn when he no longer possessed authority to sign on behalf of the corporation. Hendrickson argued the lis pendens gave constructive notice of these facts to Defendants. But Hendrickson did not oppose summary judgment by arguing he was the successor in interest to THH. He may not raise this issue now, for the first time on appeal. (*Sanchez v. Swinerton & Walberg Co., supra,* 47 Cal.App.4th at p. 1465.)

In any event, even if there was evidence that Hendrickson is the successor in interest to THH, to defeat summary judgment he would still have to offer admissible evidence creating a triable issue he holds equitable title, i.e., of the underlying fraudulent transfer to Murrieta. As already explained, Hendrickson failed to sustain that burden

28

because he entirely relied on inadmissible hearsay contained in the bankruptcy court's decision.

## DISPOSITION

The judgment is affirmed.  Defendants to recover costs on appeal.



_____

NARES, Acting P. J.

WE CONCUR:


_____

McINTYRE, J.


_____

IRION, J.