Filed 4/9/26  P. v. Samson CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LESTER MARK SAMSON,<br><br>    Defendant and Appellant. | G064849<br><br>(Super. Ct. No. 22NF3074)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael Cassidy, Judge. Affirmed.

Bailey & Romero Law and Steven C. Bailey, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Flavio Nominati, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Lester Mark Samson smashed the window of a parked truck, reached inside, and stole a collectible coin. A jury convicted Samson of auto burglary (entry into a locked vehicle with the intent to commit theft). The trial court granted Samson two years of formal probation.

Samson claims the trial court erred: (A) by failing to appoint an interpreter for his witness; (B) by failing to take judicial notice of purported facts regarding the collectible coin; and (C) by failing to secure a personal waiver of his right to be present during the final portions of the trial.

We disagree because: (A) Samson did not ask the trial court to appoint an interpreter for his witness, nor did he object to his witness testifying without an interpreter, so this claim is forfeited; (B) facts about the value of the stolen property were irrelevant; and (C) the court was not required to obtain Samson's personal waiver in order to continue with the noncritical portions of the jury trial in his absence.

Thus, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND

On October 19, 2022, at about 8:00 p.m., two people were sitting in a car in the parking lot of a Party City store in Anaheim. As they were looking at their phones, they heard the sound of glass breaking. They looked over and saw a Ford F-150 truck parked about two parking spaces over. There was glass on the ground and the window on the passenger side of the truck was partially smashed.

The witnesses saw a man, later identified as Samson, standing next to a motorcycle next to the truck. Samson was reaching into the truck through the smashed window. While the witnesses called the police, Samson

2

left on the motorcycle. A couple of minutes later, Samson returned and continued to reach through the broken window as though he was "looking for something." After a couple of more minutes Samson again left on the motorcycle, and it was at that point the police arrived.

The witnesses saw the police stop the motorcycle and arrest Samson in a nearby parking lot. The police searched Samson and found what an officer described as a bronze coin located in his front pocket. The police called the owner of the truck, Byron S. (Byron), who arrived on the scene. The police returned the collectible coin to Byron.

Byron was an antique shop owner who sometimes kept items that he resold in his truck. Byron had paid $500 for the collectible coin. Byron later testified that based on his experience, "I believe it was gold." Byron said the markings on the coin stated the name James Garfield and the year 1881, but he was not sure when the coin was minted or produced. Byron said that he sold the coin for $700 prior to the trial.

Byron said that he loaned his truck a few weeks before October 19, 2022, to his platonic friend H.P. (Eli). Their agreement was that Eli was to return Byron's truck the day after he loaned it to her, but Byron had not reported the truck as stolen. Byron identified and knew Samson, whom Byron understood to be in a romantic relationship with Eli.

*Court Proceedings*

The People filed an information charging Samson with one count of auto burglary. During the trial, Samson called Eli as a witness (her testimony will be summarized later in this opinion). After deliberating for about an hour, the jurors found Samson guilty as charged. The trial court granted Samson two years of formal probation.

3

## II.

## DISCUSSION

Samson claims the trial court committed error: (A) by failing to appoint an interpreter; (B) by failing to take judicial notice of purported facts regarding the collectible coin; and (C) by failing to secure a personal waiver of his right to be present during the latter portions of the trial.

These claims are evaluated under an abuse of discretion standard of review; a trial court's discretionary rulings ""will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."" (*People v. Aguirre* (2025) 18 Cal.5th 629, 687.)

### A. The Appointment of an Interpreter

Samson claims: "The trial court's failure to provide an interpreter for [his] Filipina defense witness who spoke with a foreign accent and had apparent difficulty being understood constitutes bias under the California Racial Justice Act." We disagree.

In this part of the discussion, we shall: 1) review relevant principles of law; 2) review the proceedings in the trial court; and 3) analyze the law as applied to the facts.

#### 1. Relevant Principles of Law

A trial court has an obligation to appoint an interpreter for a witness under certain circumstances: "When a witness is incapable of understanding the English language or is incapable of expressing himself or herself in the English language so as to be understood directly by counsel, court, and jury, an interpreter whom the witness can understand and who

4

can understand the witness shall be sworn to interpret for the witness." (Evid. Code, § 752, subd. (a).) However, "the decision on whether to appoint an interpreter [for a witness] falls within the trial court's discretion." (*People v. Augustin* (2003) 112 Cal.App.4th 444, 451.)

In order to raise an error on appeal, the issue must first be raised in the trial court, otherwise the issue is forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) In a criminal trial, "a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'" (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

"The reason for [the rule of forfeiture] is to allow errors to be corrected by the trial court and to prevent gamesmanship by the defense. [Citations.] We see no reason why the general rule of forfeiture should not be applied to . . . claims of error relating to interpreters for the witnesses. Here, each of the claimed violations of defendant's rights could easily have been addressed and corrected in the trial court had defendant objected. His failure to do so precludes him from now asserting errors relating to the witness interpreters." (*People v. Romero* (2008) 44 Cal.4th 386, 411.)

"The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin. A violation is established if the defendant proves, by a preponderance of the evidence, any of the following: [¶] (1) The judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited bias or animus towards the defendant because of the defendant's race,

5

ethnicity, or national origin." (Pen. Code, § 745, subd. (a)(1).)[1]

The purpose of the Racial Justice Act as codified in section 745 is "to eliminate racial bias from California's criminal justice system because racism in any form or amount, at any stage of a criminal trial, is intolerable [and] inimical to a fair criminal justice system . . . ." (Stats. 2020, ch. 317, § 2, subd. (i).) Generally, claims under section 745 must first be raised in the trial court and they are therefore subject to the forfeiture rule on appeal. (*People v. Lashon* (2024) 98 Cal.App.5th 804, 810–816.)

### 2. Trial Court Proceedings

Eli testified that she had known Byron for about 16 years and routinely borrowed his truck. Eli said that on October 19, 2022, she had mechanical difficulties with the truck and parked it in front of the Party City store. Eli said that she called Samson, who was a mechanic, to come check on the truck because she did not think it was safe to drive. Eli testified that she never saw a bronze or a gold coin in the truck.

On cross-examination, Eli testified she had been in a romantic relationship with Samson for about four years, but they had recently broken up before the trial. Eli said that after she called Samson and left the truck in the parking lot, she took an Uber because she had an appointment. Eli testified that when she left the truck it was unlocked, and she left the key under the floor mat.

On redirect, Samson's counsel asked Eli, "[W]hat is your first language?" Eli said, "Japanese." Counsel asked, "Okay, How long have you

---

[1] Undesignated statutory references are to the Penal Code.

been speaking English?" Eli responded, "For maybe half my life, yes." [2]
Counsel asked, "Okay. Would you feel more -- do you typically feel more
comfortable though speaking Japanese? Eli said, "Yes." Counsel asked, "And
you know that when you testify under oath that you have to tell the truth
right?" Eli responded, "Yes." Counsel asked, "Are you lying today in order to
cover for Mr. Samson?" Eli responded, "No." Both attorneys then said they
had no further questions for Eli.

### 3. Application and Analysis

Samson did not ask the trial court to appoint an interpreter for
his witness Eli at any stage of the trial. Further, Samson did not object to Eli
testifying without the appointment of an interpreter. Therefore, Samson's
claims in this regard have been forfeited for purposes of appeal. (See *People v.
Romero, supra,* 44 Cal.4th at p. 411 [the forfeiture rule applies to errors
relating to the appointment of witness interpreters].)

In any event, were we to address this claim on the merits, we
would find that the trial court did not abuse its discretion by failing to
appoint an interpreter. Based on our reading of Eli's trial testimony, it does
not appear that she was incapable of understanding the English language, or
that Eli was incapable of expressing herself in the English language so as to
be understood. (See Evid. Code, § 752, subd. (a).)

Further, we need not address Samson's related argument under
the Racial Justice Act regarding the trial court not appointing an interpreter
for Eli because this claim was not raised at trial, and it has similarly been

---

[2] It appears Eli was about 40 years old. We are uncertain why
Samson states in his briefing that Eli is a "Filipina" woman.

7

forfeited for purposes of appeal. (See *People v. Lashon, supra,* 98 Cal.App.5th at pp. 810–816 [section 745 claims are subject to the forfeiture rule].)

## B. Judicial Notice

Samson claims that the trial court committed error by denying his request for judicial notice of purported facts relating to the collectible coin that he took out of Byron's truck. We disagree.

In this part of the discussion, we shall: 1) review relevant principles of law; 2) review the proceedings in the trial court; and 3) analyze the law as applied to the facts.

### 1. Relevant Principles of Law

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

"'Under the doctrine of judicial notice, certain matters are assumed to be indisputably true, and the introduction of evidence to prove them will not be required.'" (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564.) However, because all evidence must be relevant to be admissible, a court cannot take judicial notice of facts that are not relevant to the issues at in the proceeding. (*People v. Young* (2005) 34 Cal.4th 1149, 1171, fn. 3 [""'judicial notice, which is a substitute for formal proof of a matter by evidence, cannot be taken of any matter that is irrelevant'""].)

Auto burglary is the entry into a locked vehicle with the intent to commit a larceny (theft). (§ 459, subd. (a); CALCRIM No. 1700 (Burglary)

8

["To prove that the defendant is guilty of [auto burglary], the People must prove that: [¶] 1. The defendant entered a locked vehicle; [¶] AND [¶] 2. When he entered a locked vehicle, he intended to commit theft"].)

"In order that property may be the subject of larceny, it is necessary only that it possess some intrinsic value, however, slight." (*People v. Franco* (1970) 4 Cal.App.3d 535, 542; see, e.g., *People v. Martinez* (2002) 95 Cal.App.4th 581, 584–586 [an entry into a home with the intent to take a shower (and thereby using the homeowner's soap, shampoo, and water) showed defendant's intent to commit theft of property for purposes of the burglary statute]; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042 [the actual commission of the intended theft is not an element of burglary].)

"The value of property may be shown . . . by the opinions of any of the following: [¶] (1) Witnesses qualified to express such opinions. [¶] (2) The owner . . . of the property . . . being valued." (Evid. Code, § 813, subd. (a).)

### 2. Trial Court Proceedings

Just prior to Byron testifying, Samson submitted a written motion to the trial court requesting that it take judicial notice of the following purported facts: "(1) President James A. Garfield served as President from March 4 [to] September 19,1881. [¶] (2) President Abraham Lincoln was the first President to be featured on an American circulating coin in 1909. [¶] (3) In 2005, President George W. Bush signed the Presidential $1 Coin Act, and the James Garfield coin was released in 2011." Samson's motion included supporting exhibits; however, the motion did not explain the relevance of the purported facts.

The trial court said, "Well, I'll review this and see if it's relevant to the case we have here, once we hear from the alleged victim, I guess. [¶]

9

Right now all we have is testimony there was a bronze coin and there was a picture of someone who was supposed to be James Garfield that's dated 1881. That's all we know at this point; right? [¶] All right. So I'll take it under submission."

After the close of evidence, Samson's counsel said, "I would still be asking if the Court would take judicial notice of the three facts or at least the year of James Garfield's presidency." The trial court responded, "The problem with that, it's not really relevant whether or not it was actually minted in 1881 or not. It's the fact that there was this coin that had a picture of James Garfield on the front. Apparently there was an '1881' stamped on it?" Samson's counsel argued, "I don't think it's clear in the picture."[3]

The trial court ruled: "Okay. I just don't think it makes any difference, other than the fact there was a coin. And petty theft is the theft of anything, no matter how slight the value is. [¶] So I won't take judicial notice of all the factors surrounding the fact that James Garfield served as the president from March 4th to September 14th, 1881, or President Lincoln is the first president featured on a coin or George Bush signed the Presidential Coin Act. I'll file your request and deny it."

During the first part of closing arguments, the prosecutor stated: "If the defendant took a pen worth ten cents out of this truck, that's a theft. So all of this about this coin and how much the coin was worth, none of it matters, because he still took something out of the car that didn't belong to him." During the rebuttal phase, the prosecutor stated: "So the elements of the crime are defendant entered a locked vehicle and, element two, when he

---

[3] The prosecution introduced apparently blurry images of the coin taken from the arresting officer's body camera video.

entered the locked vehicle he intended to commit a theft. I don't have to prove to you anything about whether a coin was gold or bronze or 1881 or 2011. None of that matters."

### 3. Application and Analysis

As the prosecutor correctly stated, any additional information about the collectible coin, or any information pertaining to its purported value, was wholly irrelevant to the sole auto burglary charge. That is, the purported facts in Samson's request for judicial notice had no "tendency in reason to prove or disprove any disputed fact that [was] of consequence to the determination of the action." (See Evid. Code, § 210.)

Thus, we find the trial court did not abuse its discretion—the court was not arbitrary or capricious—when it denied Samson's request for judicial notice of facts related to the collectible coin he stole from Byron's truck. (See *People v. Aguirre, supra,* 18 Cal.5th at p. 687.)

Samson acknowledges: "The court was correct to rationalize that it was not important whether the coin was valuable for purposes of determining whether a vehicular burglary had occurred." But he argues nonetheless: "The court's denial of the defendant's motion for judicial notice in this case, coupled with its allowance of testimony that the coin was gold and valuable, was prejudicial and undermined the fairness of the trial."

Quite frankly, we are not certain how to address Samson's argument on appeal because we do not understand it.

While Samson seems to acknowledge the trial court committed no error as to judicial notice, he appears to argue the court erred by allowing Byron to opine about the value of his collectible coin. But Samson did not object during Byron's testimony at the time he gave his opinion about the

11

coin, so this argument is forfeited. In any event, an owner is permitted to opine about the value of his personal property. (See Evid. Code, § 813, subd. (a).) And once again, and perhaps most importantly, any testimony about the purported value of Byron's coin was irrelevant.

Samson argued in his opening brief: "During the course of the trial the court allowed testimony to be presented that implied that the coin at issue was an 1881 James Garfield gold coin. This information was false. *The court knew that the information was false* but allowed it to be presented to the jury as if it were true." (Italics added.) We disagree.

The trial court made numerous evidentiary rulings as the issues arose during the course of the trial, and the court's rulings complied with the Evidence Code as we have analyzed. What the court may have known to be false (or true) was simply not at issue and is not relevant. We caution Samson's counsel not to make irrelevant disparaging comments regarding a trial court—or any other participants in any legal proceedings—in any future briefs filed with this court. (See *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1536–1537 ["'An attorney should not disparage the intelligence, integrity, ethics, morals or behavior of the court or other counsel, parties or participants when those characteristics are not at issue'"].)

## C. *Waiver of Right to be Present During the Trial*

Samson argues that his "right to be present at all substantive stages of trial is a personal right . . . and cannot be waived by counsel or the court." (Capitalization & boldface omitted.) We disagree.

In this part of the discussion, we shall: 1) review relevant principles of law; 2) review the proceedings in the trial court; and 3) analyze the law as applied to the facts.

*1. Relevant Legal Principles*

A criminal defendant has statutory and constitutional rights to be present at sentencing and at other critical proceedings in the case, and those rights arise under various provisions of law, including the California Constitution and the Due Process Clause of the Fourteenth Amendment. (*People v. Jennings* (2010) 50 Cal.4th 616, 681.)

"'A defendant, however, "does not have a right to be present at every hearing held in the course of a trial." [Citation.] A defendant's presence is required if it "bears a reasonable and substantial relation to his full opportunity to defend against the charges." [Citation.] The defendant must show that any violation of this right resulted in prejudice or violated the defendant's right to a fair and impartial trial.'" (*People v. Lucero* (2000) 23 Cal.4th 692, 717 [defendant's absence during jury deliberations when the jury directed questions to the court "did not prejudice him or violate his right to a fair and impartial trial"].)

Generally, "in all cases in which a felony is charged, the accused shall be physically present at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence. The accused shall be physically or remotely present at all other proceedings unless they waive their right to be physically or remotely present, with leave of court and with approval by defendant's counsel." (§ 977, subd. (b)(1).)

"The waiver of a defendant's right to be physically or remotely present may be in writing and filed with the court or, with the court's consent, may be entered personally by the defendant or by the defendant's counsel of record." (§ 977, subd. (b)(2).)

13

### 2. Trial Court Proceedings

On a Thursday afternoon, after the defense had presented its case, and outside the presence of jury, the trial court asked: "Mr. Samson, you have the right to testify in your own Defense, but you don't have to. It is up to you. Nobody can stop you from doing so, but you have the right to remain silent also. [¶] So it's got to be your personal decision. You can talk to your attorney and she can give you advice, but the final decision is yours, as to whether you want to testify. [¶] Would you like to testify in your own Defense?" Samson responded, "Your honor, pretty much -- no." The court clarified, "No?" Samson confirmed, "No."

The trial court then discussed scheduling with the attorneys. It was agreed that after finalizing jury instructions, the attorneys would present closing arguments, and then the court would orally read the instructions to the jury after the closing arguments.

The trial court brought the jury back into the courtroom after finalizing the instructions, and both sides rested. The court said to the jurors, "All right. Both sides have rested. You've heard all the evidence in the case." Both attorneys then presented closing arguments.

After closing arguments, the trial court said to the jurors, "All right. It's about a quarter to 4:00 now. It's not going to be fair to anybody if I race through these jury instructions, so we'll do that Tuesday morning. I'll read these jury instructions and you can start your jury deliberations Tuesday morning. [¶] So remember, don't discuss the case or anything involved in it with anyone. Don't form and opinions until you have had the chance to deliberate with the other jurors. [¶] And have a nice weekend and see you Tuesday morning at 9:00 o'clock."

On Tuesday morning, the following occurred on the record:

14

"THE COURT: Back on the record in People versus Samson. We have both Counsel here, but not the defendant, who was ordered back at 9:00 o'clock. [¶] How would you like to proceed at this point?

"[DEFENSE COUNSEL]: Your Honor, I did just make contact with him. He did indicate that he waived permission to be here for instructions. He indicated he's really sick and he's on his way.

"THE COURT: All right. He was ordered back at 9:00 o'clock. It's now 9:50. We have jurors who have been waiting in the hall ever since. [¶] I'm going to issue a bench warrant. He was ordered to be here at 9:00, so I'll issue a bench warrant for $50,000. And is he out on bond now?

"THE CLERK: Let me see. No. He's on an OR condition.

"THE COURT: All right. We'll bring the jurors in and I'll read the instructions.

"THE CLERK: Do I revoke the OR?

"THE COURT: Revoke the OR. [¶] Do you want me to tell the jurors he's ill?

"[DEFENSE COUNSEL]: Yes, please."

After the jurors came back into the courtroom, the following proceedings occurred on the record:

"THE COURT: Good morning. Welcome back. [¶] Sorry for the delay this morning. Apparently, Mr. Samson is ill so he called [defense counsel] and indicated it was okay if we went ahead without him. He's going to be here late and I didn't want to waste any of your morning. [¶] So I'm going to read you the instructions -- you heard all the evidence -- and then we'll send you out to deliberate after that. Okay."

The trial court then read aloud the jury instructions. At 10:11 a.m., the jury began its deliberations. At 11:30 a.m., the jury reached a

15

verdict. The court put over the reading of the verdict until 1:30 p.m., and at that time Samson had not yet appeared. Defense counsel indicated that Samson had been transported to the hospital. The court read aloud the guilty verdict in the presence of the jury and counsel. The court then set a later sentencing hearing.

### 3. Application and Analysis

Samson waived his right to be present for the reading of the jury instructions. Samson made the waiver through counsel as permitted by law. (See § 977, subd. (b)(2).) At the point when Samson was absent from the trial both sides had rested, all the evidence had been presented, and the case had been argued by both sides. Therefore, Samson's absence from the reading of the jury instructions was not a critical stage of the proceedings. (See *People v. Jennings, supra,* 50 Cal.4th at p. 681.) The matter was then submitted for the jurors to deliberate and to reach a verdict, which they did without submitting any questions to the trial court.

The Supreme Court has consistently held that a defendant's absence during a jury's deliberations is ordinarily not a violation of the defendant's statutory or constitutional rights because it is not a critical phase of a trial. (*People v. Avila* (2006) 38 Cal.4th 491, 597–598 [a defendant's absence during the trial court's response to a request for readback, which included an instruction to the jury, was not a critical stage of the trial under the Sixth Amendment]; *People v. Horton* (1995) 11 Cal.4th 1068, 1120–1121 [the rereading of testimony is not a critical stage of the proceedings].)

In sum, we find that Samson's lack of presence during the trial court's reading of the jury instructions and the taking of the verdict were not critical stages of the proceedings. Samson has not cited any authority to

16

support a different conclusion. Thus, we find no abuse of the court's discretion in this regard.

Samson cites *People v. Johnson* (2013) 221 Cal.App.4th 943, 956 (*Johnson*) for the proposition that "'defense counsel cannot waive a defendant's right of presence at trial.'" But the facts and circumstances of the *Johnson* case are readily distinguishable.

In *Johnson*, defendant was on trial for murdering her husband with a firearm. (*Johnson, supra,* 221 Cal.App.4th at p. 946.) During its deliberations, the jury asked for a readback of defendant's testimony about the gun. (*Id.* at p. 952.) Defendant's counsel told the trial court that he had texted the out of custody defendant, and she waived her right to be present during the readback of testimony. The court said, "'That's agreeable to the court.'" (*Id.* at p. 953.) However, counsel did not inform defendant that the jury had also requested a demonstration of the gun's operation. A demonstration was then conducted by the bailiff in front of the jury outside the defendant's presence without her knowledge. (*Id.* at pp. 952–954.)

"The trial court erred in depriving defendant of her statutory and constitutional rights to be present during the bailiff's demonstration." (*Johnson, supra,* 221 Cal.App.4th at pp. 954–955.) The appellate court stated that "defendant had a right to be present at each critical stage of the trial, and because it amounted to the jury's receipt of evidence, the bailiff's demonstration constituted a critical stage of defendant's trial." (*Ibid.*) The appellate court also held that under section 977, a waiver was required to waive a defendant's presence "during those portions of the trial when evidence is taken before the trier of fact." (§ 977, subd. (b)(2).) The appellate court held that because the bailiff's demonstration amounted to the jury's receipt of evidence, defendant's limited waiver communicated through her

17

attorney was ineffective. (*Johnson*, at p. 955.) However, the appellate court ultimately held: "The trial court's error in connection with the bailiff's demonstration in defendant's absence does not require a reversal because it was harmless beyond a reasonable doubt." (*Id.* at p. 957.)

Here, Samson was not present during the court's reading of the jury instructions and the court's taking of the verdict. But unlike the circumstances in *Johnson*, Samson was not absent during critical stages of his trial because no evidence was presented to the jury after the close of evidence. Therefore, unlike *Johnson*, Samson's waiver of his presence at noncritical stages of the trial, which was communicated through his attorney, was effective under section 977, and related constitutional principles.

Thus, Samson's citation to *Johnson* does not alter our holding that the trial court committed no errors as regards to his lack of presence at the final stages of his trial. In any event, even if we were to find error, we would find the error harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.)

Samson was present during the presentation of evidence and the attorneys' closing arguments. After his reported illness, the trial court told the jury that Samson was ill prior to the reading of the jury instructions, presumably in order to prevent any speculation. The jurors, who were unaware of Samson's continued absence during its brief deliberations, then reached its verdict. The jury presumably learned of Samson's continued absence only after reaching a verdict.

In sum, Samson's presence during the court's reading of the jury instructions and/or the court's reading of the verdict undoubtedly would have had no effect on the proceedings; therefore, we find that any alleged errors regarding his lack of presence were harmless beyond a reasonable doubt. (See

18

*Chapman v. California, supra,* 386 U.S. at p. 24.)

Samson also argues that the trial court violated his right to testify: "The California Supreme Court has emphasized that a defendant's absence must be voluntary for their rights to be waived. Here, the defendant's inability to testify was not voluntary but was the result of a medical emergency. The trial courts failure to accommodate the defendant's medical condition, such as by granting a continuance or exploring alternative means for the defendant to testify (e.g., remote testimony), deprived the defendant of his constitutional right to testify."

Again, the logic of this argument is difficult to follow. Samson personally waived his right to testify in a dialogue with the trial court before the close of the evidence, and before his unexpected absence from the trial. To be clear, Samson does not appear to be arguing that his personal waiver was involuntary, Samson simply fails to acknowledge that the waiver occurred.

Thus, we summarily reject Samson's claim that the trial court violated his right to testify.

## III.

## DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


SCOTT, J.


BANCROFT, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.